THE PEP BOYS, MANNY, MOE AND JACK, v. FISHER BROS. CO. *

FISHER BROS. CO. v. THE PEP BOYS, MANNY, MOE AND JACK.

Patent Appeals Nos. 3840, 3841.

Court of Customs and Patent Appeals.

Jan. 24, 1938.

*Rehearing denied March 7, 1938.

Clarence A. O'Brien, of Washington, D.C. (Charles E. A. Smith, Thomas E. Turpin, George C. Baldt, and Clarence R. Gorman, all of Washington, D. C., of counsel), for The Pep Boys.

Donald A. Gardiner, of Washington, D. C., and John Harrow Leonard, of Cleveland, Ohio, for Fisher Bros. Co.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.[1]

BLAND, Associate Judge.

These are cross-appeals in a trademark opposition proceeding arising in the United States Patent Office. For convenience of statement, in view of the cross-appeals, the Fisher Brothers Company, a corporation whose application for registration is involved, will be hereinafter referred to as the applicant, while The Pep Boys, Manny, Moe, and Jack, also a corporation, will be hereinafter referred to as the opposer.

On August 18, 1934, the applicant filed in the United States Patent Office an application for registration as a trade-mark of the words "CAN O' GOLD," for motor lubricating oils in class 15, oils and greases. In the drawing accompanying the application the words "CAN O' GOLD" are shown disposed centrally within a diamond shaped background, the word "GOLD" being beneath the words "CAN O'." Above the said words, and within the diamond-

---

[1] Graham, the late Presiding Judge, sat during the argument of this case but died before the opinion was prepared.

shaped background, is a representation of a container in the form of a can, on which can are the words "CAN O' GOLD," while in the lower part of said background are the words "MOTOR OIL," the word "MOTOR" being above the word "OIL." Extending from the borders of the diamond-shaped background along a diagonal line is a broad band or stripe. The application for registration alleged that said mark had been continuously used and applied to said goods in applicant's business since about February 13, 1933. Said application, as amended, also contained the following: " * * * The words Motor Oil, and the representation of the containers are disclaimed apart from the mark shown in the drawing."

On November 3, 1934, the opposer filed notice of opposition to the registration asked for by applicant, and since one of the questions before us is based upon the contents of said notice of opposition, the same is set out here at such length as is pertinent to said question.

"The grounds of opposition are as follows:

"1. The Pep Boys—Manny, Moe and Jack, are a corporation organized, existing and operating in accordance with and by virtue of the laws of the Commonwealth of Pennsylvania, which corporation is hereinafter designated the Opposer and has its principal place of business at Tenth and Somerville Avenue, in the City of Philadelphia, State of Pennsylvania.

"2. The Opposer is the owner of a chain of automobile accessory stores in Pennsylvania, Delaware, and New Jersey wherein is offered for sale every character of equipment for automobiles, including lubricating oils and greases.

"3. Long prior to the alleged use of the alleged trade-mark disclosed in trademark application, Serial No. 355,133, by the alleged corporation The Fisher Brothers Company hereinafter designated the Applicant, to wit, in or about June 1929, the Opposer adopted and continuously used from thence hitherto now, the legend: 'Pure as Gold.'

"4. The said legend Pure as Gold has been and is used exclusively by the Opposer, who has expended large sums of money for many years in advertising sales promotion, and kindred efforts bearing said legend, to the end where the purchasing public recognize the said legend Pure as Gold as being owned by, originating in, and representing the Opposer.

"5. The Opposer, from the date of adoption and from thence hitherto now, has continuously affixed the legend Pure as Gold to 'Cans' of lubricating oils and grease shipped in interstate and intrastate commerce, and two of such cans are attached hereto and made a part hereof and are identified by the marking 'Exhibit A.'

"6. Knowing full well the purchasing public recognize goods, and advertising bearing the legend Pure as Gold designates origin of ownership in the Opposer, the alleged applicant has alleged adoption and use of the alleged trade-mark Can O' Gold on goods of identical properties with the Cans of Pure as Gold containing Opposer's products including lubricating oils and grease, and by reason thereof there is a likelihood of confusion in the minds of the purchasing public resulting in financial loss and damage to the Opposer.

"7. Opposer is the owner of trade-mark registration 265,858, January 7, 1930 profert of which is made to the court now here and made a part hereof and the granting of the trade-mark registration on application Serial No. 355,133 will invest in the Applicant exclusive rights to the words Can O' Gold and appropriate to the Applicant all the value and good will established through diligent effort and expenditure of money by the Opposer in creating a sales demand for identical goods in Cans bearing Pure as Gold."

It will be noted that in said notice of opposition the opposer claims registration No. 265,858, registered January 7, 1930. This registration is for the words "PURE AS GOLD." In the registration the word "PURE" is shown to be disposed in a circular form within and adjacent to the upper periphery of a circle, the word "GOLD" being similarly disposed in the lower periphery of the circle. The word "AS" is in the center of the circle. Branching out laterally from the sides of the circle are representations of a pair of wings. The registration shows it to have been issued for "AUTOMOBILE LUBRICATING OILS AND CUP GREASE, in Class 15, Oils and greases, * * *." The words "PURE AS GOLD" were disclaimed apart from the mark shown.

On January 14, 1935, the applicant filed a motion to dismiss, which reads as follows:

"Now comes The Fisher Brothers Company, the applicant in the above entitled opposition and hereby moves that the Notice of Opposition be dismissed for insuffi-

ciency of fact appearing on the face of the notice and in the record to constitute a valid cause in:

"1. That it appears on the record that the Opposer relies on a right to a legend which is publici juris and any use thereof or of a similar legend by the applicant or any other party would be no violation of any statutory or common law right of the Opposer entitling the Opposer to maintain this opposition proceedings.

"2. That it appears from the record that the mark of the applicant is so dissimilar in appearance, sound and significance from the phrase 'Pure as Gold' that there is no possible likelihood of confusion arising in the mind of the purchasing public as a result of concurrent use of the mark of the Applicant and the public use of the legend 'Pure as Gold,' wherefore the Opposer has no standing to object to the registration by the Applicant.

"3. That it appears in the record that a complete opposition was not filed within the time required by the statute but that the same was informally filed during said period in that specimens were not included originally but were added only after the expiration of the 30 day statutory period."

On the same date applicant also filed an answer denying most of the allegations of opposer's notice of opposition, and among other things stating: "6. Applicant admits the allegations in Paragraph numbered 6 in the Notice of Opposition that it has adopted and used the trade-mark 'Can O' Gold' on motor lubricating oils and, further answering Paragraph 6, applicant denies that by reason of its use of the mark Can O' Gold there is a likelihood of confusion in the minds of the purchasing public and damage to the Opposer."

On January 23, 1935 the Examiner of Interferences wrote a letter reading as follows:

"The several motions and briefs filed by the parties are all noted by the examiner.

"Before the various questions raised by these motions are considered it is deemed desirable to first ascertain the statutory cause or causes of action of the opposer.

"Although this is a purely statutory proceeding, the notice of opposition discloses no attempt to paraphrase the language of the statute. Reading the notice of this opposition from the four corners thereof, the examiner infers from the allegation contained in paragraphs 1 to 6 that they only relate to and seek to draw in the con-

fusion-in-trade clause of Section 5. As to paragraph 7, the examiner can make no inference. The opposer is requested to duly confirm or deny the inference of the examiner with regard to paragraphs 1 to 6 and also to disclose the statutory language of section 5 to which paragraph 7 is intended to relate, if any. This should be done by inclosing the same within quotation marks. Otherwise stated, the precise theory of the case of the opposer should be revealed. Storm Waterproofing Corporation v. L. Sonneborn Sons, Inc., D.C., 28 F.2d 115.

"Upon failure of the opposer to duly comply with this request the case will proceed as by default and the notice of opposition will be dismissed."

In response to this letter the opposer filed in the Patent Office on January 25, 1935, a communication reading as follows:

"This letter is in response to a query presented by the Honorable Examiner of Trade-mark Interferences dated January 23, 1935.

"Your Honor is advised that paragraphs 1 to 6, inclusive, in the notice of opposition is based on that portion of Section 5(b) of the Trade-Mark Act of February 20, 1905 (as amended) as follows '* * * or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered.'

"Paragraph 7 of the notice of opposition is based on that portion of section 5(b) of the Trade-Mark Act [as amended, 15 U.S.C.A. § 85(b)] quoted as follows: '* * * or merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, * * *.'"

On February 1, 1935, the Examiner of Interferences denied the motion to dismiss filed by applicant.

Thereafter testimony was taken by the opposer; the applicant took no testimony.

On November 5, 1935, the Examiner of Interferences rendered his decision, holding that the mark "CAN O' GOLD" was not descriptive of motor lubricating oils, and that opposer "cannot here qualify under this clause." He further held, however, that there was at least reasonable doubt upon the question of likelihood of confusion, and under the rule that such doubt

should be resolved in favor of the prior user, he sustained the notice of opposition and adjudged that the applicant was not entitled to the registration applied for.

Applicant appealed to the Commissioner of Patents, and on April 27, 1936, the commissioner held there was no possibility of confusion in the use of the marks involved and reversed the decision of the Examiner of Interferences sustaining the opposition; but he also held that the mark of applicant is descriptive of the goods to which it is applied, and so denied the registration applied for.

Both parties have appealed from the decision of the commissioner. Opposer's reasons for appeal relate to so much of the decision as reversed the decision of the examiner which sustained the opposition, and applicant's appeal relates principally to so much of the commissioner's decision as denied applicant the registration of its mark. Applicant's reasons for appeal also state that the commissioner erred in not dismissing the notice of opposition "as having been so defective as to fail to create any right of opposition in the appellant-opposer." The latter being a preliminary question, we will first dispose of it.

We have hereinbefore quoted the notice of opposition, so far as is here relevant, and hold that it sufficiently sets forth a cause of action based upon the confusion-in-trade clause of section 5 of the Trade-Mark Act of February 20, 1905, as amended. This section is so familiar that we deem it unnecessary to quote it.

While the examiner required opposer to state whether his, the examiner's, construction of paragraphs 1 to 6 of the notice of opposition was in accord with the theory of opposer, and called attention to the fact that the notice "discloses no attempt to paraphrase the language of the statute," we are of the opinion that the notice is sufficiently definite with respect to said confusion-in-trade clause, and we know of no rule or reason why opposer should be bound to either quote or paraphrase the words of the statute in a notice of opposition. It is clearly sufficient if it appears from the notice that he relies upon confusion in trade under the Trade-Mark Act of February 20, 1905, as one of his grounds of opposition. Applicant's answer discloses that its counsel so construed it.

The notice being sufficient in this respect, the Patent Office tribunals acquired jurisdiction to pass upon the issue of confu-sion in trade, and also any ex parte question relating to the right of applicant to registration.

Before this court the question was presented for decision as to whether or not the opposer's appeal in the instant case became moot when the commissioner held that since the applicant's mark was descriptive it could not be registered. In view of our conclusions we think that we must necessarily pass upon this question.

In the case of Frigidaire Corporation v. Nitterhouse Bros., 63 F.2d 123, 20 C.C.P.A., Patents, 865, we held that where the commissioner's decision, denying appellee's application for registration upon the ground of descriptiveness of the mark, had become final, an appeal from the decision dismissing appellant's notice of opposition would not be entertained by us because the issue raised by such appeal was moot. We there cited the case of Dunlap & Co. v. Bettmann-Dunlap Co., 57 App.D.C. 351, 23 F.2d 772, 773, in support of such holding. The opinion in the last-cited case states: "The Commissioner refused to review the case on the ground that, since the entire proceeding is to prevent registration, and the Examiner sustained the oppositions upon one of the grounds urged by the opposer, it amounts to a denial of registration, and the opposer in fact has accomplished the result sought, and is accordingly without right of appeal. If the applicant had appealed, then the opposer might have, by cross-appeal, raised the question which he now urges, namely, the similarity of the goods on which the marks are used. But, since there was no appeal by the applicant, his right of registration is as effectively barred as if the judgment had been to sustain the oppositions."

We are not in agreement with the implication in the above quotation that an opposer has no right of appeal under a state of facts existing in that case unless the applicant has previously taken an appeal. If the applicant should wait until the last minute to file an appeal under the rules of the Patent Office, an opposer would have no opportunity to file a cross-appeal. The same would have been true in the case at bar had the applicant waited until the last minute under the rules to file an appeal to this court.

We think in such cases opposer may properly file an appeal, regardless of whether an appeal has been previously filed by an applicant; in no other way could an

opposer protect himself against an appeal and possible decision in favor of the applicant upon the issue raised by applicant's appeal, in which case the question raised by opposer's appeal could not be moot.

In the case at bar the applicant has appealed, and opposer's appeal does not present a moot question for there has been no final decision with respect to the descriptiveness of applicant's mark, wherein this case is distinguished from the case of Frigidaire Corporation v. Nitterhouse Bros., supra.

Under these circumstances, we think it proper to consider and determine the issue raised by opposer's appeal.

It appears from the testimony on behalf of opposer that, since the year 1929, opposer had used the mark "PURE AS GOLD," applied to tin cans containing lubricating oils, and that 95 per cent. of its product bearing such mark was sold in cans. As hereinbefore stated, the first use claimed by applicant of its mark "CAN O' GOLD" upon lubricating oils was in 1933.

It is well established that the right to oppose the registration of a trade-mark does not depend upon exclusive ownership by an opposer of a similar mark. California Cyanide Co. v. American Cyanamid Co., 40 F.2d 1003, 17 C.C.P.A., Patents, 1198; Trustees for Arch Preserver Shoe Patents v. James McCreery & Co., 49 F.2d 1068, 18 C.C.P.A., Patents, 1507.

Therefore, it being established that opposer had used the mark "PURE AS GOLD" upon goods of the same descriptive properties as the goods upon which applicant applies its mark "CAN O' GOLD," it follows that if there be likelihood of confusion in trade by the concurrent use of the two marks, applicant is not entitled to register its mark, by reason of the prohibition contained in section 5 of the Trade-Mark Act, as amended, 15 U.S.C.A. § 85, and in such event the opposition of opposer should be sustained.

Upon this question we are constrained to agree with the examiner "that the resemblances between these marks are such that there is at least reasonable doubt upon the question of likelihood of confusion," and that such doubt should be resolved against the newcomer, the applicant.

The commissioner in his decision states: " * * * The only similarity between this mark and applicant's resides in the occurrence in each of the word 'gold.' In all other respects they are so completely different that there could be no possibility of confusing one with the other even by the 'casual observer,' whose reaction the United States Court of Customs and Patent Appeals has recently held to be immaterial. Skram Company v. Bayer Company, 29 U.S.Pat.Q. 142 [82 F.2d 615]."

It is clear to us that the dominant portion of both marks is the word "gold." In applicant's mark the portion of the mark "CAN O'" would convey to purchasers only the thought of the container, and the word "GOLD" is the portion of the mark which would attract their attention. Also, in the words "PURE AS GOLD," the word "GOLD" is the outstanding and dominant feature of the mark.

It is our opinion that the commissioner erred in holding that the marks are not confusingly similar, and the decision of the examiner sustaining the notice of opposition should not have been reversed upon that ground.

We find it unnecessary to consider the issue raised by applicant's appeal, respecting the rejection of its application upon the ground that its mark was descriptive. Having herein sustained opposer's contention, and the decision of the Examiner of Interferences, that the two marks are confusingly similar and that the opposition must be sustained, it follows that it becomes immaterial as to whether the applicant's mark is or is not descriptive. Under our holding in the opposer's appeal, it cannot be registered in any event. If we should approve applicant's contention on the subject of the descriptiveness of its mark, it would avail applicant nothing. Therefore, in view of our conclusion in opposer's appeal, we do not think we should pass upon the issue presented by applicant.

For reasons herein stated, the decision of the Commissioner of Patents is reversed in so far as it holds that the notice of opposition upon its merits should be dismissed. The opposition should have been sustained. That portion of the commissioner's decision, in so far as it holds that applicant was not entitled to registration of its mark, is affirmed, not on the ground assigned by the commissioner, but upon the ground that by virtue of our conclusion in the opposer's appeal, applicant is not entitled to the registration of its mark.

Affirmed.

GRAHAM, the late Presiding Judge, sat during the argument of this case, but died before the opinion was prepared.

LENROOT, Associate Judge (specially concurring).

I concur in the conclusion reached by the majority that applicant's mark is not registrable for the reason that appellant's notice of opposition should be sustained; but I think that, under the circumstances of this case, it should also be held that applicant's mark is descriptive and that the decision of the commissioner so holding should be affirmed.