32 C.C.P.A. (Patents)

**HOFFMANN–LA ROCHE, Inc., v. KAWERK.**

**Patent Appeal No. 4977.**

Court of Customs and Patent Appeals.

March 6, 1945.

Rehearing Denied April 9, 1945.

558

Briesen & Schrenk, of New York City (Louis Alexander and H. von Maltitz, both of New York City, of counsel), for appellant.

Almon S. Nelson, of Richmond, Va., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

Appellee, Roch D. Kawerk, doing business as Rox Products Company, made application to the United States Patent Office, under the provisions of the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., for the registration of his trade-mark $\frac{\text{"Rox"}}{\text{Rox-Salve}}$ for use on "Salve, useful in the treatment of head and chest colds, nasal congestion, and as an antiseptic dressing for minor cuts or insect bites." Appellant, Hoffmann-La Roche, Inc., filed notice of opposition to said proposed registration, based upon the prior use of its registered trade-mark "Roche" on a large variety of medicinal and pharmaceutical preparations, including preparations recommended for the treatment of colds and preparations having antiseptic qualities.

Appellant took the testimony of one witness, its acting vice-president; appellee took no testimony.

Appellant alleges a use of its mark, by itself and its predecessors, over a period of nearly fifty years for a "constantly varying and ever-increasing line of medicinal and pharmaceutical preparations," and that during that period millions of dollars had been spent in advertising and popularizing said mark. These allegations find support in the evidence introduced by appellant. Appellee's earliest use of his mark on his goods was November 29, 1941.

The Examiner of Trade-mark Interferences held that the marks, in some instances used on identical goods, are confusingly similar, and that "confusion may be reasonably expected, to result from their concurrent use in trade"; and (the appellant being senior in use) he sustained the opposition and adjudged that appellee's mark should not be registered.

Upon appeal, the Commissioner of Patents (speaking through an assistant commissioner), took the opposite view from that taken by the examiner with reference to the likelihood of confusion and reversed the examiner's decision. 58 U.S.P.Q. 614. It was the view of the commissioner that purchasers of appellee's salve would call for "Rox Rox Salve" rather than asking for "Rox Salve." He recognized the similarity, in sound but held that those desiring appellant's "Roche" salve would state the nature of the preparation, and that, considering "Rox Rox Salve" in its entirety, there was such a difference in the appearance and manner in which the goods of the respective parties would be purchased that confusion would be unlikely.

It will be noticed that appellee's trade-mark, as applied for, is $\frac{\text{"Rox"}}{\text{Rox-Salve.}}$ The word "salve" has been disclaimed. In the label submitted to the Patent Office illustrating the manner in which appellee uses his mark, it is observed that immediately under the first term "Rox" is placed the word "Brand" in small red letters. The first term "Rox" is also printed in red, while the term "Rox-Salve" is printed in green. This would seem to indicate that appellee regards the second "Rox" as the important term of the mark in indicating origin. Appellee's answer to the notice of opposition admits that "Rox" is the dominant feature of the mark. We think all the probabilities are that purchasers will call for appellee's product as "Rox Salve" and it is our view that confusion would be likely to result, owing to the fact that on the same shelf would probably be found appellant's "Roche" salve.

There is some dispute about the pronunciation of the word "Roche," which admittedly is the French word for "rock." The record shows that the term "Roche" is correctly pronounced with a short "o," as in the term "rochelle," which means a small rock, and that "rochelle" is pronounced with a short "o," as the "o" is pronounced in the words "rock" and "Rox."

Both products are sold over the counter (appellant's extensively), and appellant's "Roche" salve is additionally sold on physicians' prescriptions.

It is our view that the Examiner of Trade-mark Interferences arrived at the right conclusion in holding that purchasers of salve might obtain a different product from that which they contemplated purchasing, or at least would be confused with reference to the origin of the goods. We think there is sufficient similarity in sound, appearance, and meaning between the two marks, the goods in part being identical, to justify the conclusion that the likelihood of confusion flowing from the concurrent use of the marks would be imminent. At least there is sufficient doubt on the question to require, when it is resolved against the applicant-appellee, that the opposition be sustained and the registration of appellee's mark be denied.

Appellant has cited a number of cases with reference to the dominant portion of appellee's mark. Unquestionably, under the circumstances stated, the "Rox" part of the mark is the only portion calculated to indicate origin. This is true notwithstanding the fact that the mark applied for must be considered in its entirety as $\frac{\text{Rox}}{\text{Rox-Salve}}$. Appellee, in urging that confusion would be unlikely, argues that appellant's mark "Roche" would be pronounced "Rōsh" as in "roach." The record does not support this contention, and it is, of course, well known that the pronunciation of proper names is more or less arbitrary. So, it is probable that the name would be pronounced "rock" as often as "Rosh."

Numerous decisions are cited by the appellee in support of his position that the marks ars sufficiently dissimilar in sound, meaning, and appearance to avoid the likelihood of confusion; but we find it unnecessary to discuss them because, as we have frequently said, so many different considerations enter into the determination of a question of this character that each case must, in the final analysis, rest on its own bottom. It is seldom that any decided case involving this question affords an absolute yardstick for decision.

On the question of considering the marks in their entirety, appellee urges the applicability of numerous decisions. Of course, it is the rule that in determining this question, the mark as a whole must

be taken into consideration; but that does not mean that those called upon to determine the question may not analyze the different features of the mark with a view of determining whether the marks involved in a case are confusingly similar. See Franco-Italian Packing Corporation v. Van Camp Sea Food Co., Inc., Cust. & Pat. App., 142 F.2d 274, and cases therein cited.

Appellee, as well as the commissioner, stresses the fact that appellee's mark is $\frac{\text{Rox}}{\text{Rox-Salve}}$ and that one calling for "Rox Rox Salve" would not be confused with appellant's "Roche" salve. If it is assumed that confusion would be likely to result between "Rox" salve and "Roche" salve, it does not seem reasonable to believe that appellee avoids the probability of confusion by repeating the dominant feature of his mark. It seems to us that under such circumstances, the importance of the word "Rox" is emphasized rather than minimized.

It is further proper to say that in cases of this character, in considering the likelihood of confusion, it is of greater importance to consider the points of similarity than the points of difference. In Guggenheim v. Cantrell & Cochrane, Ltd., 56 App.D.C. 100, 10 F.2d 895, 896, Mr. Justice Robb, speaking for the Court of Appeals of the District of Columbia (now the United States Court of Appeals for the District of Columbia), said: "In this court, it has been repeatedly declared that there is neither legal nor moral excuse for even an approximate simulation of a well-known mark applied to goods of the same descriptive properties, and that, when an attempt to effect such simulation becomes apparent, the two marks should not be examined with a microscope to detect minute differences, but, on the contrary, should be viewed as a whole, as the general public would view them; in other words, that the points of similarity are of greater importance than the points of difference. * * *"

The last above-quoted language was cited by us with approval in Campbell Products, Inc. v. John Wyeth & Bro., Inc., Cust. & Pat. App., 143 F.2d 977.

It would be logical to conclude that appellee, when he adopted his mark, the reasons for doing so not being shown (except as the similarity of his Christian name and the term "Rox" appears), knew of the favorable repute of appellant's identical

product, sold under the "Roche" mark. Under such circumstances it was incumbent upon him to select, from the vast field of trade-mark possibilities, a term that would indicate origin of the goods in him and one which would not be likely to bring about the result Congress, in the enactment of the said Trade-Mark Act, sought to avoid. Failing to do so, the law requires that registration be denied.

The decision of the Commissioner of Patents is reversed.

Reversed.

BLAND, Associate Judge (concurring).

I concur in the foregoing opinion and, in addition to what is said by the majority, I wish to express my views on one phase of the case which is not mentioned by the majority.

In determining the similarities and dissimilarities between trade-marks, each feature of each mark may be separately considered with a view toward ascertaining what purchasers and sellers of the merchandise would do and think. The statute under which we are proceeding was designed to do away with the likelihood of confusion, and the pertinent portion reads: " * * * be likely to cause confusion or mistake in the mind of the *public* or to deceive *purchasers* * * *." (Italics mine.)

We are concerned not only with what the purchaser might think, but in the instant case, if one came into a drugstore and asked for the new product, "Rox Salve", there would be a grave probability that if the druggist had only "Roche Salve", he might mistakenly deliver it to the purchaser; thus, being deceived himself, he would aid in the deception of the purchaser. The statute attempts to ward against confusion or mistake in the mind of the *public* as well as to avoid deceiving *purchasers*. Surely the drug clerk is not only a seller but also a purchaser of the salve, and he also forms one of the public. In a case of the character of that at bar, we are interested not only in seeing that the purchaser makes no mistake himself, but that he is not led into error by the confusion or mistake of others interested in the transaction.