**HAT CORPORATION OF AMERICA,**
Appellant,

v.

**JOHN B. STETSON COMPANY,**
Appellee.

**Patent Appeal No. 6144.**

United States Court of Customs
and Patent Appeals.

June 15, 1955.

Alexander, Maltitz, Derenberg & Daniels, New York City (H. von Maltitz and Joe E. Daniels, New York City, of counsel), for appellant.

Thomas W. Y. Clark, Baltimore, Md. (Samuels & Clark, Baltimore, Md., of counsel), for appellee.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through the Assistant Commissioner, 100 U.S.P.Q. 147, reversing the decision of the Examiner of Interferences which sustained appellant's notice of opposition to the registration by appellee, under the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., of the notation "Railbird" as a trade-mark for hats for men.

Appellee alleged April 26, 1950 as the date of first use of the involved mark in commerce among the several states. The application was examined and passed for publication pursuant to section 12(a) of the Trade-Mark Act of 1946, and the mark was duly published in the Official Gazette on May 1, 1951. On June 28, 1951, appellant filed its notice of opposition.

In its notice of opposition, appellant alleged that it is the owner of Trade-Mark Registration No. 324,210, dated May 14, 1935, for the term "Game Bird" for hats for men and women. It was also alleged, in substance, that the goods to which the term "Railbird" is to be applied are identical in kind with the goods sold by opposer and that there would likely be confusion in the trade to the detriment of opposer.

There was no testimony taken by opposer. However, opposer did submit, by stipulation, copies of the definitions of "rail" and "railbird" as follows:

Webster's New Twentieth Century Dictionary (Unabridged) copyright, 1942, by The World Publishing Company:

"rail, n. [OFr. rasle, raale, a rail; same origin as rattle, being so called from its note.] Any bird of the family Rallidœ; more particularly, Rallus virginianus, the American rail, a favorite game bird; also, the land rail or corn crake, and water rail of Europe."

"railbird, n. 1. A bird, the Carolina rail, *Porzana* carolina.

2. In sporting parlance, a hanger-on at race tracks; a small better; a piker. [Slang]"

These definitions were submitted apparently for showing that the marks "Railbird" and "Game Bird" are synonymous in meaning.

Applicant-appellee submitted deposition testimony of two of its employees. This testimony, insofar as pertinent here, is to the effect that an advertisement of the "Railbird" hat appeared in "Esquire" magazine for the fall, 1950, season; and that the mark is stamped in the hat band of hats. Other testimony also brought out information to the effect that birds and parts of birds have been used as headgear since 1580 B.C.

The Examiner of Interferences was of the opinion that the resemblance between the terms "Game Bird" and "Railbird" was such "that their contemporaneous use would be reasonably likely to result in confusion in trade" when used on the identical item of men's hats.

The Assistant Commissioner did not concur in this belief and stated:

"If the proofs had shown that 'Railbird' functions as a trade-mark, I should be constrained to disagree with the Examiner of Interferences as to likelihood of confusion on the grounds that the marks of both parties are apparently always used in conjunction with the more familiar and better known trade-marks 'Dobbs' (opposer's) and 'Stetson' and device (applicant's), thereby eliminating likelihood that purchasers would be confused, misled or deceived into believing that the hats so marked emanate from the same source; and the marks do not look alike, do not sound much alike and have distinctly different connotations."

However, the Assistant Commissioner felt, *ex parte*, that applicant was not entitled to registration of the term "Railbird" since it was merely a style designation of a particular Stetson hat. In this respect the Assistant Commissioner stated:

"* * * So far as it appears, the word 'Railbird' has been called to the attention of the public in one advertisement as a particular type or style of 'Stetson' hat, it is used to set up orders in the order section of applicant and is used by salesmen in selling hats to retailers. It is true that the word appears in the hatband, but that fact alone, unaccompanied by evidence of advertising and advancement as a trade-mark showing the 'indisputable intention of acquiring it as such' * * * is insufficient to overcome the evidence indicating that the word is used only to designate a particular style. Style designations, as such, are not registrable."

Opposer has appealed from the decision of the Assistant Commissioner. Applicant has not appealed.

It has been held that an appeal by opposer-appellant, under certain circumstances, is not moot notwithstanding that registration has been denied to applicant-appellee on other grounds. Pep Boys, Manny, Joe, & Jack v. The Fisher Bros. Co., 94 F.2d 204, 25 C.C.P.A., Patents, 818. This must necessarily be so under the facts in this case since it appears that applicant-appellee is not *finally* precluded from obtaining registration if he overcomes the *ex parte* objections to registration raised by the Assistant Commissioner. Compare with the situation in Pabst-Ette Corp. v. Dr. W. J. Ross Co., 120 F.2d 390, 28 C.C.P.A., Patents, 1164, where applicant-appellee did not appeal from an *ex parte* decision that the mark sought to be registered was either descriptive or misdescriptive of appellee's goods, and since this decision was final, appellant-opposer's appeal from the holding that its goods and appellee's goods were not of the same descriptive properties was held to have become moot. Also see Frankfort Distilleries, Inc., v. Dextora Co., 103 F.2d 924, 26 C.C.P.A., Patents, 1244. In the present case, it ap-

pears from the record, and in fact it is stated by appellee that "the way is left open by the decision of the Commissioner for appellee to file a new application under the same law to register its mark after obtaining a *greater quantity* of trademark use, and this action is intended if need be." It, therefore, follows that the appeal by appellant-opposer is well taken in order to obtain our review of the portion of the decision which held the marks not confusingly similar, this being necessary to finally resolve the *inter partes* portion of the Assistant Commissioner's decision.

The law which is pertinent to the issue of confusing similarity in the present case was set forth in our recent case of L. J. Mueller Furnace Co. v. United Conditioning Corporation, 222 F.2d 755, 42 C.C.P.A., Patents, ——. We therefore quote the following portion of the decision:

"The test applied by this court in an opposition proceeding is the likelihood of confusion in the mind of the purchasing public as to the origin of the goods. Nestle's Milk Products, Inc., v. Baker Importing Co., Inc., 182 F.2d 193, 37 C.C.P.A., Patents, 1066; Standard Laboratories, Inc., v. Proctor & Gamble Co., 167 F.2d 1022, 35 C.C.P.A., Patents, 1146. This is a subjective test. Therefore prior decisions are of little value since each case must be decided on its own particular set of facts. North Star Manufacturing Co. v. Wells Lamont Corp., 193 F. 2d 204, 39 C.C.P.A., Patents, 764.

"However, various rules have been developed for the purpose of aiding in the determination of the question of confusing similarity. It is well settled that the marks must be considered in their entireties. Apollo Shirt Co. v. Enro Shirt Co., Inc., 165 F.2d 469, 35 C.C.P.A., Patents, 849; Valpo Co. v. Solis, Entrialgo y. Compania, 175 F.2d 457, 36 C.C.P. A., Patents, 1160. But different features may be analyzed to determine whether the marks are confus-

ingly similar. Hoffman-La Roche Inc., v. Kawerk, etc., 148 F.2d 557; 32 C.C.P.A., Patents, 954, and similarities and dissimilarities should both be considered, Younghusband v. Kurlash Co., Inc., 94 F.2d 230, 25 C. C.P.A., Patents, 886.

"It has also been held that the common portions of the marks cannot be disregarded; Schering & Glatz, Inc., v. Sharp & Dohme, Inc., 146 F.2d 1019, 32 C.C.P.A., Patents, 827, but a descriptive word, which has little trade-mark significance, will not be regarded as the dominant part of the mark, West Disinfecting Co. v. Lan-O-Sheen Co., 163 F.2d 566, 35 C.C.P.A., Patents, 706."

It appears that appellant's main contention, that the term "Railbird" is confusingly similar to the term, "Game Bird," is predicated on the proposition that similarity as to either sound, appearance, or meaning is sufficient to indicate likelihood of confusion, citing Hancock v. American Steel & Wire Co. of N. J., etc., 203 F.2d 737, 741, 40 C.C.P.A., Patents, 931. There is no doubt that this is the law. However, whether these factors exist, as indicated by the above-quoted law, is a matter of opinion dependent on the facts of each particular case.

It is our opinion, applying the above-quoted criteria for determining similarity to the terms before us, when the terms are viewed in their entireties, they do not look alike or sound alike, as held by the Assistant Commissioner. Although the common portions of the words, "Bird," cannot be disregarded, and are no doubt identical, the dissimilarities must also be considered. These dissimilar portions, "Rail" and "Game," in our opinion, are sufficiently different to cause the words in their entireties to be more different than alike. We reach this conclusion notwithstanding that the above-cited dictionary definitions define a railbird as a game bird. In the Hancock case, supra, we said "Our holding in this case that confusion is likely is based on our belief that the *popular* or *ordina-*

ry meanings of 'Tornado' and 'Cyclone' are identical, although there are certain technical distinctions between the two terms." In the present case, although it appears that the term "game bird" is generic to the term "railbird" we feel that this fact of itself would not be likely to cause confusion because, as we have indicated above, the words do not sound alike or look alike, and for the further reason that we do not feel that the *popular* or *ordinary* meanings of the terms are identical, one word merely being a species of the other.

We must state that in reaching our decision we have flatly rejected the following theory presented by appellee:

"The use of birds on and as hats, headdress and sections of birds such as wings, and hats wholly covered with pheasant feathers, not only from ancient times but also down to the present time, before and since appellant's [opposer's] use of its mark, is clearly equivalent to the use of the word 'bird' as describing those hats. * * * Since the figure of a bird, large or small, on a hat is in the public domain, so is the word, 'bird' in regard to hats. * * * 'A descriptive word having little trademark significance, will not be regarded as the dominant part of a mark.' * * * It is therefore believed that the words of the mark must be considered together, and since 'bird' is not dominant, 'Rail' and 'Game' must be regarded as the distinguishing portions of the marks."

Both the Examiner of Interferences and the Assistant Commissioner apparently felt that the "dominant portion theory" was not applicable to the present facts. We are of the same opinion because we feel that the contention that the term "bird" is descriptive of hats is quite unrealistic.

We feel that it is also necessary to comment on the Assistant Commissioner's statement " * * * that the marks of both parties are apparently always used in conjunction with the more familiar and better known trade-marks 'Dobbs' (opposer's) and 'Stetson' * * (applicant's), thereby eliminating likelihood that purchasers would be confused * * *." We are in agreement with appellant-opposer's statement, "The mark for which appellee itself sought registration is not Stetson Railbird but Railbird alone. * * * The appellant's registration covers Game Bird alone. It is true that in the two advertisements made of record and in the specimens of appellant's mark submitted with the notice of opposition, the additional trademarks do appear. The controversy however, between the parties concerns Game Bird and Railbird, the marks shown in the application and registration respectively. * * *" We therefore feel that it was improper to consider the marks Stetson and Dobbs under the foregoing fact situation.

There is one other aspect of the present case which requires consideration, namely, that appellee filed no appeal from the adverse *ex parte* holding of the Assistant Commissioner. In this respect, we are of the opinion that we have no authority to consider the *ex parte* decision of the Assistant Commissioner since no appeal was taken by appellee. See Pocahontas Operators Association v. Carter Coal Co., 160 F.2d 114, 34 C.C. P.A., Patents, 926; Coty, Inc., v. Perfumes Habana, S. A., 190 F.2d 91, 38 C. C.P.A., Patents, 1180; Revere Paint Co. v. Twentieth Century Chemical Co., 150 F.2d 135, 32 C.C.P.A., Patents, 1096.

It is to be noted that appellant did not include in the record appellee's exhibits 1 to 19, inclusive, and an index to these exhibits. The index and exhibits were added on motion of appellee to correct diminution of the record. This added matter was necessary for a proper decision of this case and costs for making such addition are therefore assessed against appellant.

We have carefully considered appellant's arguments and the cited cases, however, for the foregoing reasons we

**490**

are of the opinion that the decision appealed from should be affirmed.

Affirmed.

WORLEY, J., concurs in the conclusion.

JACKSON, Judge, retired, sat for GARRETT, Chief Judge.