43 C.C.P.A.(Patents)

**BURTON–DIXIE CORPORATION,**
Appellant,

v.

**RESTONIC CORPORATION,**
Appellee.

**Patent Appeal No. 6185.**

United States Court of Customs
and Patent Appeals.
June 20, 1956.

Wilson & Geppert, Ira J. Wilson and Carl F. Geppert, Chicago, Ill., for appellant.

Hill & Hill, Roy W. Hill, and John W. Hill, Chicago, Ill. (Edwin E. Greigg, Washington, D. C., of counsel), for appellee.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON, retired, Judges.

JOHNSON, Judge.

This is a trade-mark opposition proceeding, brought by Burton-Dixie Corporation, owner of the trade-mark Ortho-flex (or, as apparently used in advertising, Ortho-Flex), in opposition to the registration of the mark Orthotonic to the applicant, Restonic Corporation. According to stipulation, the marks are used on substantially identical goods, mattresses and box springs, which are marketed through the same channels of trade to the same classes of purchasers and are sold in competition with each other.

Opposer's mark, Orthoflex, is registration No. 292,811, registered March 29, 1932, under the Act of 1905, renewed March 29, 1952, and republished under the Act of 1946, 15 U.S.C.A. § 1051 et seq., on October 24, 1950. The mark has been in continuous use since 1931. Restonic's application is serial No. 617,211, filed August 1, 1951, first use having been alleged as of June 18, 1951.

The Examiner of (Trade-mark) Interferences sustained the opposition, basing his decision primarily on his belief that the term "Ortho," appearing in both marks, would be likely to cause the marks in their entirety to be confused or mistaken by purchasers when applied to identical goods.

The Assistant Commissioner of Patents, acting for the commissioner, reversed the holding of the examiner, being of the opinion that both marks were secondary marks, that purchasers were likely to remember the marks in their entireties rather than only the prefix, and that, considered in their entireties, there was no likelihood of confusion, mistake or deception between them. Opposer, Burton-Dixie Corporation, appeals from that decision.

The basic issue in this case, of course, is whether the mark sought to be registered, Orthotonic, so resembles the registered mark, Orthoflex, "as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers * * *." Trade-Mark Act of 1946, § 2; 15 U.S.C.A. § 1052. If it does, then the opposition must be sustained.

This case presents an interesting question of whether the fact that opposer's registered mark has been used with other marks in the past may properly be considered on the issue of likelihood of confusion in the future. Specifically, the Assistant Commissioner stated:

"It is clear from the record that the marks of the parties are secondary marks, opposer's primary mark being 'Slumberon' and applicant's being 'Restonic.'

\* \* \* \* \*

"As above stated, both marks are secondary marks. The record supports the view that the commercial impression created by them is tied closely to their use with the primary marks—i. e., 'Restonic Orthotonic' and 'Slumberon Ortho-Flex.' I am not convinced that they are mere model, style or type designations, however; but in view of the suggestive nature of the marks, *their use as secondary marks,* their sound and significance, I do not believe that there is any likelihood of confusion, mistake or deception of purchasers." [Italics ours.]

■ Opposer challenges the factual basis of this holding. An examination of the exhibits and testimony, while showing that Orthoflex was frequently used with "Slumberon," shows that it was sometimes used alone and sometimes with a mark other than "Slumberon." We do not think that the meager evidence here is sufficient to establish that Orthoflex is indeed a secondary mark. However, the more basic question is whether such concurrent use is properly considered at all in an opposition proceeding. The Assistant Commissioner cited no cases in support of her holding, and appellee has not seen fit to do so either.

On first impression, it would seem logical to conclude that if marks involved in an opposition were used concurrently with other primary marks, that likelihood of confusion would be substantially diminished, because the use of the primary mark would help distinguish the goods. However, the cases which have considered the question have rejected that reasoning. In Hat Corp. of America v. John B. Stetson Co., 223 F.2d 485, 487, 42 C.C. P.A., Patents, 1001, the involved marks were "Railbird" and "Game Bird," and the Assistant Commissioner had held that " ' * * * the marks of both parties are apparently always used in conjunction with the more familiar and better known trade-marks "Dobbs" (opposer's) and "Stetson" and device (appli-

cant's), thereby eliminating likelihood that purchasers would be confused, misled or deceived into believing that the hats so marked emanate from the same source; * * * ." This court, although affirming the decision below, distinctly indicated that it did not follow the reasoning of the Assistant Commissioner with respect to the usage of the marks with Stetson and Dobbs, because the controversy as presented in the opposition proceedings was between "Game Bird" and "Railbird" alone.[1]

In Weco Products v. Milton Ray Co., 143 F.2d 985, 987, 31 C.C.P.A., Patents, 1214, we said:

"Appellant urges one other point, to the effect that its mark 'Vray' is associated with, and used in connection with, the name 'Dr. West's', and that this should have been given consideration in connection with the determination of the likelihood of confusion. It is too obvious to require extended discussion that this argument is without merit. Appellant's practice in this regard would be subject to change. [Citing cases.]"

The logic behind these cases becomes clear. To argue that marks which have been used as "secondary" marks will not be confused, it is necessary to assume that the marks will continue to be so used in the future. Such an assumption could be justified only if each party had no legal right to use his registered mark by itself. So far as we are aware, there is no such limitation on the right to use a mark, at least under the facts of this case. We would not be willing to support a ruling which would give a broad right to register a mark, but a limited right to use that mark. Neither are we willing to assume that Ortho-Flex and Orthotonic will continue to be used in association with other marks. It is not uncommon for a manufacturer to use more than one mark on his goods, and to vary the emphasis placed on various marks, to change the way in which a mark is used, or to discontinue it altogether.

The exhibits in this case show that Ortho-Flex has been used in several different ways in the past, sometimes alone, sometimes with other marks, sometimes emphasized, sometimes not. There is no justification for assuming that such variation will not occur in the future. Likewise, we see no reason for assuming that applicant will continue to use Orthotonic with "Restonic." The mark it seeks to register is Orthotonic without qualification, not Restonic Orthotonic.

Another facet of the case which has been emphasized by appellee, is the fact that the mattresses, etc., which have been sold by opposer bearing the Ortho-Flex mark, contain springs constructed according to certain patents owned by the opposer. Appellee argues that the mark Ortho-Flex has been used to identify the patented spring construction, rather than the mattress, and such appears to have been the holding of the Assistant Commissioner, although it is not clear what weight she gave to that holding. In our opinion, however, the exhibits in the case show that such has not been the exclusive use of the mark. Exhibit 3, for example, is an advertisement which states " * * be sure to use an Ortho-Flex Mattress, * * * ," and which lists among the exclusive features of that mattress the "Patented Ortho-Flex Sleep Unit." Thus, it would appear that "Ortho-Flex" has been used not only to designate the spring construction, but also the mattresses containing such construction. Furthermore, applicant's answer to the notice of opposition states, "Applicant * * * admits that the goods of the parties hereto are of the same descriptive properties,—namely mattresses and

---

1. For a discussion of this case, see Derenberg, "The Eighth Year of Administration of the Lanham Trade-Mark Act of 1946," 45 T.M.R. 987, 998, where it is stated, " * * * the Court of Customs and Patent Appeals appears to be more sympathetic toward protection of secondary marks, than the Office has been in some of the more recent cases."

bed or box springs * * *." The notice had additionally alleged that the goods were identical, which was not denied in the answer. Any argument that the goods of the parties are not identical —that is, that Ortho-Flex is applied to patented "sleep units" and not to the goods of the application—is therefore out of order at this stage. Trade-Mark Rule 231; Fed.Rules of Civ.Proc., rule 8(d), 28 U.S.C.

Having disposed of the foregoing questions we now come to the basic question of whether the mark Orthotonic is confusingly similar to the mark Ortho-Flex.

■■ Various rules have been developed for the purpose of aiding in the determination of confusing similarity. It is of course well settled that the marks must be considered in their entireties. Apollo Shirt Co. v. Enro Shirt Co., Inc., 165 F.2d 469, 35 C.C.P.A., Patents, 849; Hat Corp. of America v. John B. Stetson Co., supra. But different features may be analyzed to determine whether the marks are confusingly similar, Hoffmann-La Roche, Inc. v. Kawerk, 148 F.2d 557, 32 C.C.P.A., Patents, 954, and similarities and dissimilarities should both be considered, Younghusband v. Kurlash Co., Inc., 94 F.2d 230, 25 C.C.P.A., Patents, 886. It has also been held that the common portions of the marks cannot be disregarded, Schering & Glatz, Inc. v. Sharp & Dohme, Inc., 146 F.2d 1019, 32 C.C.P.A., Patents, 827, but a descriptive word, which has little trademark significance, will not be regarded as the dominant part of the mark, West Disinfecting Co. v. Lan-O-Sheen Co., 163 F.2d 566, 35 C.C.P.A., Patents, 706.

■ It is also well settled that the test applied by this court in an opposition proceeding is the likelihood of confusion in the minds of the purchasing public as to the origin of the goods. Nestle's Milk Products, Inc. v. Baker Importing Co., Inc., 182 F.2d 193, 37 C.C.P.A., Patents, 1066; Standard Laboratories, Inc. v. Procter & Gamble Co., 167 F.2d 1022, 35 C.C.P.A., Patents, 1146. Since this is a subjective test, prior decisions are of little value since each case must be decided on its own particular set of facts. North Star Manufacturing Co. v. Wells Lamont Corp., 193 F.2d 204, 39 C.C.P.A., Patents, 764.

■ Applying the foregoing law to the present case, we are of the opinion that Orthotonic and Ortho-Flex, when viewed in their entireties, are not confusingly similar. Even if they are not viewed in their entireties, but the similarities and dissimilarities are compared, we find that while the prefixes "Ortho" are identical, the suffixes Tonic and Flex do not look alike, sound alike, or have the same meaning. We feel that the dissimilarities are greater than the similarities and thus cause the marks on their entireties to be more different than alike. We come to this conclusion especially since the word "ortho" which is common to both marks is an accepted prefix having such meanings as "straight," "correct," or "regular," and therefore should not be considered the dominant portion of the marks since it is somewhat descriptive of the merchandise to which the marks are applied in the sense that it connotes a desirable characteristic of the merchandise under consideration. We therefore conclude that the marks in their entireties neither look nor sound sufficiently alike, nor do they have the same meaning so as to warrant our concluding that when used on similar goods they would be likely to cause confusion in the trade.

For the foregoing reasons the decision appealed from is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.

WORLEY, Judge, concurs in the conclusion.

O'CONNELL, Judge, was present at the argument of this case, but, because of illness, did not participate in the decision.

COLE, Judge (dissenting).

While I am in agreement with the majority's statements of the involved legal principles, I do not believe that those principles have been correctly applied to the facts of this case.

The majority states that it has come to the conclusion that the marks are not confusingly similar "especially" because the prefix "ortho" is "somewhat descriptive" of the merchandise, and therefore should not be considered the dominant portion of the marks. Even admitting the somewhat improbable assumption that the purchasing public has a sufficient knowledge of Greek roots to interpret "ortho" as indicating that the mattress in question is "straight," "regular," or "correct," the majority has still faced only half the problem. If the prefix "ortho" is "somewhat descriptive" of mattresses, the suffix "flex" is abundantly descriptive of mattresses, and there is even less reason to consider it the dominant portion of the mark. The same is true with respect to the suffix "tonic." If it would give the purchaser any impression other than mere assonance with appellee's name "Restonic," it seems to me that it should be considered at least as descriptive as "ortho." Depending on the pronunciation, it would seem to indicate the rejuvenating or "tonic" qualities of the mattress, or (with a long vowel sound) that the mattress had or gave "tone." .

Trademarks exist in a practical world, not in a world of lexicographers. If we direct our attention away from the dictionaries and consider the facts of commercial affairs, I think the conclusion is inescapable that "ortho" is the dominant portion of the marks involved herein. Although many words in the dictionaries may begin with the prefix "ortho" it is not too frequently used in ordinary speech. One of the more common words

in which it is used is "orthodox." However, the prefix is widely recognized for its use in referring to branches of the medical arts, e. g., orthopedics, orthodontia. There is testimony in this case that in the 1940's there was considerable use by mattress manufacturers of the word "orthopedic" to describe their products, until, at the instigation of the Federal Trade Commission, the industry adopted trade practice rules prohibiting the indiscriminate use of the word. "Ortho," as a prefix to a trademark for mattresses, would be more likely, in my opinion, to suggest a medical connotation, than to describe the mattress as "straight," "regular," or "correct." I think that "ortho" because of its rather infrequent use in common speech, and its medical connotation when so used, would be likely to strike a purchaser more forcibly than either suffix, and would stick longer in his mind.

In this connection, it is interesting to note how applicant came to adopt its mark. When the trade practice rules for the bedding, manufacturing, and wholesale distributing industry, promulgated in 1950, prohibited the use of "orthopedic" on bedding products, applicant (who had been using "orthopedic" on its mattresses) was obliged to discontinue the use of the word. Thereupon applicant sought registration for the mark involved here. The fact that the prefix "ortho" was carried whole into the mark sought to be registered seems to indicate that considerable weight was given it by the applicant. I think the average purchaser would give it the same weight.

In my opinion, the prefix "ortho" is the dominant portion of the two marks, and considered as a whole the marks are likely to cause confusion, mistake, or deception of purchasers. The decision of the Commissioner should be reversed.