55 CCPA

**S C M CORPORATION, Appellant,**

v.

**ROYAL McBEE CORPORATION, Appellee.**

**Patent Appeal No. 7976.**

United States Court of Customs and Patent Appeals.

June 6, 1968.

Strauch, Nolan, Neale, Nies & Kurz, John D. Nies, Washington, D. C., for appellant.

Liddy, Sullivan, Hart, Daniels & Baxley, Francis J. Sullivan, New York City (Joe E. Daniels, New York City, of counsel), for appellee.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, and KIRKPATRICK.*

WORLEY, Chief Judge.

Royal McBee seeks registration of "ELECTRESS" for use on "Typewriting Machines and Parts Thereof." SCM opposes on prior use and registration of its trademark "ELECTRA" for "Electric Typewriters."

After reviewing at some length the testimony and other evidence submitted by the parties, the Trademark Trial and Appeal Board[1] summarized its finding that:

> The record supports opposer's claim of prior rights in the mark "ELECTRA". The goods of the parties, although specifically different in certain physical characteristics, are nevertheless electric typewriters which have been advertised in the same media for substantially similar purposes and which have been sold in many instances through the same retail outlets. Under these circumstances, the marketing of these goods under the same or similar marks is reasonably likely to lead to confusion in trade. Accordingly, this case turns on whether or not "ELECTRESS" is confusingly similar to "ELECTRA".

We have found nothing from our review of the record in conflict with that résumé. However, we are not persuaded that the board correctly concluded that the opposition should be dismissed. It reasoned:

> These marks are alike primarily in that each contains the designation "ELECTR" as the initial portion. This designation was obviously adopted by the parties to suggest that their respective typewriters are electrically actuated. In this regard, "ELECTR" is listed in Webster's Third New International Dictionary (Unabridged, 1961) as a combining form denoting electric or electricity. In fact, the dictionary lists more than two hundred words incorporating the letters "electr" to suggest or describe something that possesses an electrical characteristic or feature. Accordingly, it is believed that the differences between the marks "ELECTRESS" and "ELECTRA" are sufficient to obviate any likelihood of confusion as to the source of the goods sold thereunder. This conclusion is bolstered by the testimony by one of opposer's area

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. 149 USPQ 904.

sales managers, referred to above, to the effect that notwithstanding that at least eight dealers within his area have been selling both "ELECTRA" and "ELECTRESS" typewriters, not one of them ever indicated that any person has confused applicant's machine with that of opposer.

Granted that the marks suggest the electrical features of the competing products; that Webster lists more than two hundred words incorporating "electr;" and the testimony of one witness regarding alleged[2] lack of actual confusion, the issue nevertheless is whether Royal's mark "ELECTRESS" "so resembles" SCM's mark "ELECTRA," when both are viewed in their entirety in the market place, "as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." [3]

It seems clear to us that when "ELECTRESS" and "ELECTRA" are used on the same goods,[4] advertised and sold to the public through the same channels of trade, there would be a likelihood of purchaser confusion within the meaning of § 2(d) of the Trademark Act of 1946.

The decision is reversed.

Reversed.

RICH, Judge (dissenting).

I would affirm. While consumers might be confused as to the source of *some* goods concurrently sold under the trademarks ELECTRA and ELECTRESS, I do not believe this would be the case when the goods are *electric* typewriters. Fort Howard Paper Co. v. Gulf States Paper Corp., 376 F.2d 904, 54 CCPA 1375 (1967); E. L. Bruce Co. v. American Termicide Co., 285 F.2d 462, 48 CCPA 762 (1960). Furthermore, electric typewriters are so expensive and purchased so infrequently as to assure that considerable care will be exercised in their selection with attention to who made them. It does not appear to me that the majority has given sufficient consideration to the nature of the goods, their cost, the purely descriptive nature of the "ELECTR" portion of the marks, or the precedents above cited and others of like import.

Furthermore, opposer's own exhibits, presumably attached to its Notice of Opposition to support its case, show that its use of ELECTRA in advertising and on the typewriters is in association with "Smith-Corona" and "SCM Corporation," or both. It is not opposer's practice to rely on ELECTRA as a primary source designation. This is another reason why, *on this record*, there is no reasonable likelihood of confusion, mistake, or deception. As further rendering it unlikely, the record shows the applicant's commercial practice to be to merchandise "ROYAL ELECTRESS" typewriters so that purchasers know the source to be appellee, not opposer.

2. The witness testified:
   XQ4. Have any of these dealers ever suggested to you that anyone has confused your machine with the Electress? A. No, sir, they haven't.
   As appellant points out, the record does not show that any of those dealers were ever asked to relate instances of existence of "confusion." The dealers' failure to volunteer such information can hardly be construed as evidence of the presence or absence of actual confusion.

3. Lanham Act, Section 2(d).

4. Certain exhibits reflect the parties' *current* practice of associating their house marks "SCM" and "Royal" with "ELECTRA" and "ELECTRESS", respectively. However, our concern here, of course, is whether "ELECTRA," the mark actually registered, and "ELECTRESS," the mark for which registration is sought, are confusingly similar when applied to the instant goods. See In re Beaunit Mills, 274 F.2d 436, 47 CCPA 755, 758, citing Burton-Dixie Corp. v. Restonic Corp., 234 F.2d 668, 43 CCPA 950. See also Denney v. Elizabeth Arden Sales Corp., 263 F.2d 347, 46 CCPA 790; Sealy, Inc. v. Simmons Co., 265 F.2d 934, 46 CCPA 857; Bellbrook Dairies, Inc. v. Hawthorn-Mellody Farm Dairy, Inc., 253 F.2d 431, 45 CCPA 842; Hat Corp. of America v. John B. Stetson Co., 223 F.2d 485, 42 CCPA 1001.

It appears to me that the majority has overlooked or given insufficient weight to the foregoing and other factors, as reported at 149 USPQ 904, which led the three-member board to its eminently sound unanimous decision.