31 C.C.P.A. (Patents)

### FRANCO–ITALIAN PACKING CORPORATION v. VAN CAMP SEA FOOD CO., Inc.

Patent Appeal No. 4881.

Court of Customs and Patent Appeals.
April 4, 1944.

Jackson, Webster & Read, of Washington, D. C. (Chas. R. Allen, of Washington, D. C., and William H. Mackay, of San Francisco, Cal., of counsel), for appellant.

Minier & Fihe, of Los Angeles, Cal. (Albert J. Fihe, of Chicago, Ill., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The appellant, Franco-Italian Packing Corporation, hereinafter referred to as applicant, filed its application in the United States Patent Office for the registration of its trade-mark "Gem-of-the-Sea", which it uses in the sale of canned fish. The Van Camp Sea Food Co., Inc., hereinafter referred to as opposer, filed notice of opposition to the said registration, alleging its ownership and use of the two "registered trade-marks "Chicken of the Sea" and "Sea Chicken."

The Examiner of Interferences held that since the goods were identical, the marks as a whole were so similar that there would

be likelihood of confusion, sustained the opposition, and adjudged that applicant was not entitled to the registration sought.

The Commissioner of Patents, upon appeal, affirmed the decision of the Examiner of Interferences, and from the commissioner's decision applicant has here appealed.

Applicant concedes to opposer priority in the use of the marks and presents here the sole issue as to whether or not the tribunals below correctly found that the marks were so similar as to lead to confusion within the meaning of the trademark law. Much is said in both briefs on the subject of the descriptive character of the marks or portions thereof, it being urged by opposer that the marks must be considered as a whole under the well-settled rule, and that, the term "of the Sea" in one of opposer's marks and in the mark of applicant being identical, the public would be led to believe, upon seeing applicant's goods, that they originated with opposer.

We are of the opinion that the tribunals below fell into error in holding that the marks, when viewed as a whole, were confusingly similar. It is true, as pointed out by the opposer, that it is settled law that in determining the question of likelihood of confusion the marks must be viewed as a whole. So far as we know, the law has never been otherwise—certainly not since the Supreme Court in the case of Beckwith's Estate, Inc., v. Commissioner of Patents, 252 U.S. 538, 40 S.Ct. 414, 417, 64 L.Ed. 705, said:

"The commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail. For this reason it should be considered in its entirety * * *."

■ This fact, however, is no justification for a refusal to consider the similarity of certain portions of the marks and separating them for the purpose of such consideration. Marks may contain descriptive or geographical terms which, by themselves, anyone has the right to use, and their extensive common use is sometimes persuasive of the conclusion that such similar descriptive or geographical portions of a mark would not be looked to as indicating the origin of the goods.

■ The correct rule has been stated by this court many times. We must look to the mark as a whole, regardless of descriptive portions, and determine whether

or not the use of the whole mark in the same field in which the mark of another is used would be likely to cause confusion.

While the facts in the case of Younghusband v. Kurlash Co., Inc., 94 F.2d 230, 231, 25 C.C.P.A., Patents, 886, in which the marks "Starlash" and "Kurlash" were involved, differed from those at bar, we there said:

"It is familiar doctrine that, in determining the question of confusing similarity of marks, they must be considered as a whole, but it does not follow that portions of marks which are similar must be given equal weight with portions of marks which are dissimilar. * * *

"We believe that purchasers would pay little attention to the last syllable of the marks as bearing upon the origin of the goods, but, seeing the marks as a whole, the mind would fasten upon the syllable 'Kur' in appellee's mark and 'Star' in appellant's mark, and the last syllable in each mark would be given little attention other than with respect to its descriptive character."

In Miles Laboratories, Inc., v. Pepsodent Co., 104 F.2d 205, 207, 26 C.C.P.A. Patents, 1272, where the marks "Pepso-Seltzer" and "Alka-Seltzer" were involved, this court, in holding that the term "Seltzer" was descriptive, pointed out that any other conclusion than that at which we arrived would "result in appellant having practically a monopoly of the word 'Seltzer' in a trade-mark."

To the same effect was our holding in Miles Laboratories, Inc., v. United Drug Co., 112 F.2d 814, 817, 27 C.C.P.A., Patents, 1273, where the marks "Rex-Seltzer" and "Alka-Seltzer" were involved. We there said:

"* * * if the term 'Rex' in appellee's mark is sufficiently dissimilar from the term 'Alka' in appellant's mark so that when considered in their entireties, the marks of the parties are not confusingly similar, appellee is entitled to have its mark registered. * * *"

See also Yeasties Products, Inc., v. General Mills, Inc., 77 F.2d 523, 22 C.C.P.A., Patents, 1215.

The case of Hall v. Pennzoil Co., etc., 126 F.2d 506, 508, 29 C.C.P.A., Patents, 933, seems to be closely in point on the nice question here presented. In that case we had before us the marks "Pennpayz" and "Pennzoil." We held that there was no

likelihood of confusion and called attention to the fact that there was "little resemblance either in meaning or sound except in the syllable 'Penn' * * *." We also said that "the syllables 'Payz' and 'Zoil' are so different in appearance and meaning that we think, as applied to oils and greases, purchasers would not likely be deceived in the origin of the goods * * *", and we pointed out the generally recognized purpose in applying the term "Penn" to lubricants. There, neither party was entitled to a monopoly of the term "Penn"; so here, neither party is entitled to a monopoly of the term "of the Sea."

In so concluding, we do not mean to characterize the term as an improper portion of a trade-mark. It is generally recognized that most canned fish comes from the sea. The public should be free to use the term "of the Sea" in handling sea food. In doing so, however, one is not privileged to adopt a mark containing the said term, which mark as a whole is so confusingly similar to a mark owned and previously used by another as to mislead the public.

█ Now, with these principles in view, and dissecting the marks only for the purpose of determining the meanings, sounds, and appearances of the same in relation to the question of confusing similarity it seems clear to us that the word "Gem" and the word "Chicken" are so utterly dissimilar in sound, meaning, and appearance as to insure against the likelihood of confusion when the two marks containing the term "of the Sea" are concurrently used. "Gem" has a wholly different significance from "Chicken." "Chicken" may suggest (we have held that "Chicken" is not descriptive, Van Camp Sea Food Co. v. Alexander B. Stewart Organizations, 50 F.2d 976, 18 C.C.P.A., Patents, 1415) that the fish upon which the mark is used is young and tender or excellent in taste. When we think of "Gem", we think of a jewel—something of great price or rare beauty, or the term may suggest desirability. No one is likely to be confused in buying an "of the Sea" product by reason of any similarity when that term is associated with the dissimilar words "Gem" and Chicken", respectively.

While cases of this character, as we have often said, presenting as they do close questions with respect to whether or not there is a likelihood of confusion, are largely matters of opinion and not easy of decision by reference to other cases because of the differing factual situations, we think the following decisions support our conclusion here: Rosenberg Bros. & Co. v. Horwitz, 35 F.2d 784, 17 C.C.P.A., Patents, 641, (holding "Washington Park" and "Fashion Park" not confusingly similar); Rosenberg Bros. & Co. v. Simon Levin & Sons Co., 37 F.2d 962, 17 C.C.P.A., Patents, 847 (holding "College Park" and "Fashion Park" not deceptively similar); Bourjois, Inc., v. Cheatham Chemical Co., 47 F.2d 812, 18 C.C.P.A., Patents, 1089 (holding "Polly Peachtree" not deceptively similar to "Peaches", "Peach Blow", "Peaches and Cream", or "Velvet of Peaches"); L. Otzen & Co. v. J. K. Armsby Co., 49 App.D.C. 134, 261 F. 1014 (holding "Blossom and Sunshine" and "From the Land of Sunshine" not confusingly similar); and Plough Chemical Co. v. Bullion, 55 App.D.C. 294, 5 F.2d 117 (holding "Black and White" not deceptively similar to "Red and White").

Opposer relies in part upon the decision of this court in the case of Marshall Field & Co. v. R. H. Macy & Co., Inc., 115 F.2d 921, 922, 28 C.C.P.A., Patents, 807, in which we held the marks "Crepeglo" and "Crepetex" confusingly similar. We there said:

"It is very clear to us that the words 'Crepeglo' and 'Crepetex' bear a marked resemblance to each other in sound, appearance and meaning. The first syllable of each is identical and the last syllable certainly suggests a characteristic of the goods."

The facts there were wholly different from the facts here, since there was a greater resemblance between the marks there than there is between the marks at bar.

█ Opposer has devoted considerable space in its brief in contending that its mark is not descriptive and has cited a number of cases in support of such contention. As before stated, we have held that "Chicken" is not descriptive, and, since "Chicken of the Sea" is a registered mark, it comes to us with the presumption that it is a valid mark and therefore not descriptive.

Applicant has devoted some space in its brief to a charge of "unclean hands" on the part of opposer. In view of our conclusion, it is unnecessary for us to consider this question. We could not do so anyway, because applicant has assigned no

reason of appeal covering this subject matter.

The decision of the Commissioner of Patents is reversed.

Reversed.

GARRETT, Presiding Judge, did not participate in the consideration or decision of this case.