**PRO–PHY–LAC–TIC BRUSH CO. v. JORDAN MARSH CO.**

**Civ. A. No. 5142.**

District Court, D. Massachusetts.

March 3, 1947.

George P. Dike and George P. Towle, Jr. (of Dike, Calver & Porter), both of Boston, Mass., for plaintiff.

Kenway & Witter and Herbert P. Kenway, all of Boston, Mass., for defendant.

HEALEY, District Judge.

This is an action for trade mark infringement with a prayer for an injunction and for damages as provided for by Section 96 of Title 15, United States Code Annotated.

This court has jurisdiction of this action under Section 97 of Title 15, United States Code Annotated.

Before trial the parties submitted a stipulation containing a "list of exhibits" and a "statement of facts". The parties agreed and stipulated that the exhibits identified in the list of exhibits should be offered in evidence without objection by either party except on the question of the relevancy or materiality of any of them. It was also agreed and stipulated that the matters set forth in the statement of facts be presumed to be true and not subject to objection by either party except on the question of the relevancy or materiality of any such fact to the present action.

At the trial before this court on December 20, 1946, the exhibits mentioned in the "List of Exhibits" and other evidence were introduced and the court heard the arguments of counsel.

I find the facts to be as follows:

The plaintiff, Pro-phy-lac-tic Brush Company, a Delaware corporation, having a usual place of business in Northampton, Massachusetts, has been in the business of making and selling toothbrushes, hairbrushes and various toilet and dresser sets since prior to 1901.

The defendant, Jordan Marsh Company, is a Massachusetts corporation operating a department store in Boston, Massachusetts.

An issue of the Boston Herald published March 14, 1946, contained an advertisement

by Jordan Marsh Company advertising certain articles or commodities. A section of this advertisement was devoted to an illustration of a toilet set showing a hairbrush, mirror and comb and entitled " 'Gemlite' Vanity Set".

Below this was the following description: "Beauty for your dressing table * * * beauty for you with this sparkling, crystal clear vanity set of 'Gemlite' plastic. Pretty pastel design of frolicking cherubs is inset in the back of the nylon-bristle hair-brush and round, full-view mirror. You'll find the practically unbreakable comb made for everyday use, too * * * a perfect combination of beauty and practicability. Pink, blue or white. 15.00 (non-taxable)"

On March 15, 1946, Jordan Marsh Company sold the boxed dresser set which is in evidence as plaintiff's exhibit (4). This exhibit consists of a hairbrush, a mirror and a comb, and was sold at the retail price of $15. On the box in which these articles were enclosed, was a gummed label rectangular in shape, 3 inches long and 1 inch wide, bearing the words Gemlite Dresser Set in one line, in printed blue type. The hairbrush is of clear plastic material with a white decorative cloisonne insert embellished by a cherubic design on the back. The nylon bristles are set in wood which in turn is set in the plastic frame. There is no trade mark or label on the hairbrush. The round mirror is set in a clear plastic frame with the same white decorative cloisonne work insert as the hairbrush on the back. Stuck on the glass mirror is a gem-shaped blue paper label with silver-colored edging. Printed on this label in silver-color are the words "Gem" and "Lite" placed one above the other. Below the word "Lite" are the words "Trade Mark", and below those words are "Gemloid Products N. Y.", one under the other. The comb is of clear plastic material, on one end of which appears the word Gemlite in small letters.

This dresser set was purchased by Jordan Marsh Company from Gemloid Corporation of New York, the manufacturer. Gemloid Corporation has agreed to indemnify Jordan Marsh Company for any loss that may be sustained as a result of its sale of Gemlite Dresser Sets and has provided Jordan Marsh Company with the exhibits which have been introduced in evidence by the defendant. Jordan Marsh Company is relying in part on rights asserted to reside in Gemloid Corporation in its defense to this action.

On April 5, 1940, Pro-phy-lac-tic used the word "Jewelite" as a trade mark stamped on hairbrushes which were sold in interstate commerce. This use has continued ever since. It applied for registration of its trade mark "Jewelite" on hairbrushes on May 2, 1940, and registration was granted by the Commissioner of Patents on October 22, 1940.

It applied for registration of "Jewelite" in separate script on hairbrush and comb sets and toilet and dresser sets on May 27, 1943, and registration was granted on this application November 7, 1944.

The plaintiff has used the trade mark Jewelite on hairbrushes in interstate and foreign commerce continuously since April 5, 1940; on Hairbrush and Comb sets continuously since August 15, 1940; on mirrors and on Dresser Sets continuously since January 2, 1941, and on Toilet sets since June 16, 1941. In each case the trade mark was placed on the goods and on boxes containing them. In practically all the advertisements of plaintiff's products which are exhibits in this case, the word Pro-phy-lac-tic appears in a prominent manner with the word Jewelite in such a way as to identify the plaintiff's Jewelite products with the manufacturer's trade name of Pro-phy-lac-tic.

There is a hairbrush and comb manufactured by the plaintiff in evidence (Defendant's Exhibit EE). The plaintiff's hairbrush is a crystal clear plastic with nylon bristles set directly into the frame. There is no decorative insert on the back. On the handle is impressed in script in one line the words "Pro-phy-lac-tic Jewelite". The comb is of the same material and prominently on the middle of the frame is impressed the same label in the same manner.

For the year 1940, Pro-phy-lac-tic spent $38,608.50 in advertising its "Jewelite" products, and by the end of 1944, had spent a total therefor of $648,215.01.

During the year 1940, sales of "Jewelite" products amounted to $314,055.31, and by the end of 1944 totaled $6,103,402.25.

The plaintiff greatly expanded its plant and equipment to meet the demand for its Jewelite line of goods.

Gemloid Corporation, incorporated in 1931, was in 1934 making mirrors with decorative inserts on the back made of cloisonne finish material referred to by Gemloid as its "Gemlike" material, and was selling them to dealers in the toiletries trade. The mirrors did not bear any trade mark when shipped by Gemloid. Between 1934 and 1939, Gemloid sold sheets of decorative material which it called its "Gemlike", "Gemloid" and "Enameloid" displays. This decorative material was sold to manufacturers of mirrors, hairbrushes, and the like.

Gemloid has registered as its trade mark the words "Gemlike", "Gemloid", "Gem-Glo" and "Gem-Cote".

On January 2, 1939, Gemloid Corporation shipped unlined plastic ring boxes to Wolfsheim & Sachs, Buffalo, New York containing the marking "Gem Lite" in two words, one above the other within a gemshaped figure.

At various dates, Gemloid Corporation subsequently used the name "Gemlite" on other plastic creations as follows: March 8, 1940, on plastic clock cases; May 13, 1940, on empty plastic powder containers; June 10, 1940, on plastic parts of lamps.

On February 19, 1940, Gemloid applied for registration of "Gem Lite" as a trade mark on "plastics in class k, Raw or partly prepared materials", alleging the use of the mark in interstate commerce since September 6, 1939. This registration was granted December 9, 1941.

Although Gemloid Corporation used the word "Gemlite" prior to the use by the plaintiff of the word "Jewelite", the plaintiff's use of the word "Jewelite" on toilet sets preceded the use by the Gemloid Corporation of the word "Gemlite" on toilet sets.

Gemloid Corporation's trade mark registration #392,064 for "Gemlite" did not cover completely manufactured toilet sets, but only plastic castings used for molding parts of toilet sets among other specified articles.

The plaintiff's trade mark registration No. 410,035 for "Jewelite" did cover completely manufactured toilet sets made of or backed with plastic material.

## Discussion

The plaintiff's action arises under Section 96 of Title 15, United States Code Annotated which is as follows: "Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such [registered] trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, * *. * and shall use, * * * such reproduction, counterfeit, copy, or colorable imitation in commerce among the several States, * * * shall be liable to an action for damages therefor at the suit of the owner thereof * * *".

The plaintiff does not contend that Gemloid Corporations mark "Gemlite" is a reproduction, counterfeit or copy of the registered trade mark "Jewelite", but contends that the mark "Gemlite" is a colorable imitation of the registered mark "Jewelite".

Assuming, therefore, without deciding, that the plaintiff's use of the trade mark "Jewelite" on completed toilet sets preceded the use by Gemloid Corporation of the mark "Gemlite" on completed toilet sets, and that the manufacture and sale of completed toilet sets was not a natural expansion of the business of Gemloid Corporation, the sole question to be determined is whether or not the words "Jewelite" and "Gemlite" have caused or are likely to cause consumer confusion as to the source of the merchandise. Dwinell-Wright Co. v. National Fruit Product Co. Inc., 1 Cir., 140 F.2d 618; Industrial Rayon Corporation v. Dutchess Underwear Corporation, 2 Cir., 92 F.2d 33; Seven Up Company v. Cheer Up Sales Company, 8 Cir., 148 F.2d 909.

In this case, there is no evidence of actual consumer confusion. Plaintiff bases its case on the likelihood of such confusion.

It has been held that when the issue of a colorable imitation of a trade mark is presented and "no evidence of actual instances of confusion in the purchase of goods is introduced, the test of deceptive similarity is whether ordinary purchasers, buying under the usual conditions in the trade and exercising ordinary care would likely be induced to purchase the article to which the accused trade-mark is affixed, believing it to be the plaintiff's article." Seven Up Company v. Cheer Up Sales Company, 8 Cir., 148 F.2d 909, 911.

Or as stated in this Circuit, "the basic test of trade-mark infringement is whether the goods of the alleged infringer would be supposed by the kind of people who purchase them to emanate from the same source as the goods of the complainant." Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618, 622.

In the present instance, both the toilet sets made by the plaintiff and those made by Gemloid Corporation are similar in that they are made of a plastic material. They are both sold in department stores, probably at the same or adjacent counters in the same department. They are both in relatively the same price class *. There, however, the similarity ends, except insofar as the trade names are similar.

The decorative cloisonne inserts in the mirror and hairbrush of the "Gemlite" set distinguish that set in appearance from the clear plastic of the "Jewelite" mirror and hairbrush.

The sole question to be determined is whether or not the terms "Jewelite" and "Gemlite" are so confusingly similar as to cause prospective purchasers of toilet sets to purchase "Gemlite" sets under the impression that they are buying goods manufactured by Pro-phy-lac-tic.

Although in determining this question of confusing similarity of marks, we must consider the marks as a whole, it does not follow that portions of marks which are similar must be given the same weight as the portions that are dissimilar. Younghusband v. Kurlash Company, Inc.,

94 F.2d 230, 25 C.C.P.A. (Patents) 886; Franco-Italian Packing Corporation v. Van Camp Sea Food Co., 142 F.2d 274, 31 C.C.P.A. (Patents) 1029.

In the instant case, therefore, the fact that the two marks both end in "lite" is not controlling; in fact, it is relatively unimportant.

In the Second Edition (1942) of Webster's International Dictionary, the suffix "lite" is defined as "A combining form equivalent to-lith, denoting: a mineral, rock, fossil in stone, etc, as cryolite, ryolite, dendrolite." It has been used commonly in combination with several words to denote generally some manufactured substitute for a mineral such as, "Bakelite", "Hy-a-lite", "Crystolite", "Idolite", "Emlite", "Lapilite" and "Sparkelite". When so used, and as used in "Jewelite" and "Gemlite", it is merely descriptive of the material of which the product is manufactured, and as such, is not subject to exclusive ownership by the plaintiff.

The other components of the marks in issue "Jewel" and "Gem" are the predominating parts of these marks. While substantially alike in meaning and generally used synonymously, "Jewel" and "Gem" are alike neither in sound or appearance.

The same is true of the marks as a whole. "Jewelite" composed of three syllables neither sounds nor looks like "Gemlite" composed of but two syllables. Even when both are printed in the same type of script, the difference between them is apparent, and it seems most unlikely that the ordinary purchaser of a $10 or $15 toilet set would be confused merely by the similarity of meaning of the two marks.

Furthermore, in the line of toiletries of this price class, in which plastics are widely used, the ordinary customer is more interested in the physical appearance and workmanship, and would rely greatly on an inspection and visual comparisons of two sets in making a purchase. In making such an inspection, a prospective purchaser in examining the "Gemlite" mirror would no doubt see the name "Gemloid

---

* Plaintiff's pre-war price for a set composed of a brush, comb and mirror was $10, and the retail price of the "Gemlite" set sold by Jordan Marsh on March 14, 1946 was $15.

Products" on the label affixed thereto, and would know that the set was not made by the plaintiff.

Even were this not the case, and these sets were sold by name only, by mail as a result of advertising by newspapers, periodicals or radio, the words "Jewelite" and "Gemlite" as applied to toilet sets are not confusingly similar and the use of "Gemlite" on toilet sets made by Gemloid Corporation would not lead the ordinary purchaser to believe that such sets were the product of the plaintiff.

■ I am, therefore, of the opinion that the use of the mark "Gemlite" on toilet sets made by Gemloid Corporation and sold by Jordan Marsh Company does not constitute an infringement of plaintiff's trade mark "Jewelite".

Because of my finding that there is no likelihood of confusion by prospective purchasers buying under the usual conditions, as a result of the use of "Gemlite" by Gemloid Corporation on toilet sets, and, therefore, no infringement of plaintiff's trade mark, it is unnecessary to determine the other questions argued by the parties in their briefs and at the hearing.

The complaint is dismissed.