44 C.C.P.A. (Patents)

**Benjamin D. SMITH (Black Panther Company, Inc., Assignee, Substituted), Appellant,**

v.

**TOBACCO BY–PRODUCTS AND CHEMICAL CORPORATION (Diamond Black Leaf Company, Assignee, Substituted), Appellee.**

Patent Appeal No. 6264.

United States Court of Customs and Patent Appeals.

April 4, 1957.

John Howard Joynt, Washington, D. C., for appellant.

Walter H. Free, New York City (Thornton F. Holder, Painesville, Ohio, and Richard G. Fuller, New York City, of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON (retired), Judges.

WORLEY, Judge.

This is an appeal from the decision of the Assistant Commissioner of Patents, hereafter referred to as the commissioner, reversing the decision of the Examiner of Interferences and sustaining an opposition to the application of Benjamin D. Smith, for registration of a mark comprising a representation of a green leaf, with the words "Green Leaf" superimposed thereon, as a trademark for a spray for fruits and vegetables. The mark was also denied registration on the *ex parte* ground that Smith was no longer using the mark, having previously assigned his rights therein to his son. Since the filing of the instant appeal, Smith has been replaced by the assignee of his application, Black Panther Company, Inc., appellant here. Opposer, Tobacco By-Products and Chemical Corporation, has been replaced by its assignee, Diamond Black Leaf Company, appellee.

The opposition is based on ownership of registrations and prior use by appellee of the trademarks "Black Leaf" and "Black Leaf 40," both marks having allegedly been used alone and also in association with a leaf design. Although there is some mention in the record of alleged use by appellee's predecessors of the marks "Gold Leaf" and "Rose Leaf," they are not relied on. We agree with the commissioner there is no such evidence as to the use of either to affect appellant's right to registration of the instant "Green Leaf" mark.

The first question to be determined is whether the marks are so similar as to be likely to cause confusion or mistake, or to deceive purchasers, when used on the goods of the respective parties. There appears to be no significant difference between the goods of the parties, since both include plant and garden sprays, although additional use of appellee's product as an insecticide for use on animals is also stressed in some of the exhibits.

It is evident that the words "Green Leaf" and "Black Leaf" are the dominant portions of the marks, rather than the leaf, and must be given primary consideration in determining the question of confusing similarity.

In contending that the word "Leaf" is the dominant portion of each mark, and that the marks are confusingly similar, appellee relies on the decisions of this court in Bielzoff Products Co. v. White Horse Distillers, Ltd., 107 F.2d 583, 27 C.C.P.A., Patents, 722, and Frankfort Distilleries, Inc. v. Kasko Distillers Products Corporation, 111 F.2d 481, 27 C.C.P.A., Patents, 1189. Both cases relate to trademarks for alcoholic beverages. In the former, "Red Horse" was held confusingly similar to "White Horse" and "Black Horse." In the latter, a similar holding was made with respect to "Maryland Rose" and "Four Roses."

Those cases appear to be easily distinguishable from the facts here. Whereas the words "Rose" and "Horse" are arbitrary as applied to alcoholic beverages, the word "Leaf," as applied to a plant spray is not arbitrary, but is definitely suggestive of the use to which the product is to be put.

It has frequently been held that trademarks, comprising two words or a compound word, are not confusingly similar even though they have in common one word or part which is descriptive or suggestive of the nature of the goods to which the marks are applied, or of the use to which such goods are to be

put. The following are instances in which such marks were held not to be confusingly similar: Miles Laboratories, Inc., v. Pepsodent Co., 104 F.2d 205, 26 C.C.P.A., Patents, 1272 (Pepso-Seltzer and Alka-Seltzer); Sears, Roebuck & Co. v. Elliott Varnish Co., 7 Cir., 232 F. 588 ("Never Leak" and "Roof Leak"); James Heddon's Sons v. Millsite Steel & Wire Works, Inc., D.C., 35 F.Supp. 169 (Millsite Basser and Head-On Basser); Franco-Italian Packing Corp. v. Van Camp Sea Food Co., Inc., 142 F.2d 274, 31 C.C.P.A., Patents, 1029 (Gem-of-the-Sea and Chicken of the Sea or Sea Chicken); Morton Manufacturing Corporation v. Delland Corporation, 166 F.2d 191, 35 C.C.P.A., Patents, 917 (Slick Stick and Chop Stick); Rite-Rite Mfg. Co. v. Rite-Craft Co., 181 F.2d 226, 37 C.C.P.A., Patents, 963 (Rite-Craft and Rite-Rite); Magnaflux Corp. v. Sonoflux Corp., 231 F.2d 669, 43 C.C.P.A. Patents, 868 (Magnaflux and Sonoflux); Burton-Dixie Corp. v. Restonic Corp., (Orthotonic and Orthoflex). See also Goldring, Inc., v. Town-Moor, Inc., 228 234 F.2d 668, 43 C.C.P.A., Patents, 950 F.2d 254, 43 C.C.P.A., Patents, 740, and cases there cited. The reasoning in those cases would clearly suggest that "Black Leaf" and "Green Leaf" are not confusingly similar.

Further, we agree with the examiner that appellant's mark "Green Leaf," as applied to a plant spray, suggests that use of the spray would make or keep the leaves of the plants green. Since obviously no such suggestion would result from the mark "Black Leaf," that fact constitutes an additional distinction.

The examiner noted that there has been concurrent use of the "Green Leaf" and "Black Leaf" marks for a considerable time without any evidence of confusion. While that fact is not conclusive on the issue of likelihood of confusion especially when, as pointed out by the commissioner, the use of the "Green Leaf" mark has been relatively limited, we think it is still a factor which may properly be given some weight in determining the issue presented. In re Myers, 201 F.2d 379, 40 C.C.P.A., Patents, 747; A. J. Krank Mfg. Co. v. Pabst, 6 Cir., 277 F. 15, and Coca-Cola Co. v. Carlisle Bottling Works, D.C., 43 F.2d 101.

It is also noted that appellant's application shows a composite mark comprising the words "Green Leaf" together with a picture of a five pointed leaf, generally similar in appearance to the maple leaf, while appellee's marks either involve no leaf picture, or a picture of a leaf with only two points, thus resembling a tobacco leaf. The commissioner observed that since 1950 there has been a change in the leaf design used by appellant "so that the present leaf simulates opposer's leaf design except it is green while opposer's is black." However, what we are primarily concerned with is the registrability of the mark as shown and described in the application itself. Walter Baker & Co., Ltd., v. Altamay Chocolate Co., 37 F.2d 957, 17 C.C.P.A., Patents, 874; Intercontinental Mfg. Co., Inc., v. Continental Motors Corp., 230 F.2d 621, 43 C.C.P.A., Patents, 841; Kiekhaefer Corp. v. Willys-Overland Motors, Inc., 236 F.2d 423, 43 C.C.P.A., Patents, 1013. As was noted in the Walter Baker case, if the applicant varies the mark shown in his application in such a way that confusion is likely to result, a proper forum is available for redress.

The cases cited by the parties have been considered but it is well established that prior decisions are of little value in trademark cases since each case must rest on its own distinctive facts. Crown Overall Mfg. Co. v. Desmond's, 182 F.2d 645, 37 C.C.P.A., Patents, 1118. Here, in our opinion, the marks do not look alike, sound alike, nor do they have the same meaning. Accordingly, we are of the opinion they are not confusingly similar, and the action of the Examiner of Interferences in dismissing the opposition should have been affirmed. It is therefore unnecessary to consider when the marks were first used by the respective parties.

The commissioner also denied registration on an *ex parte* ground. The holding in that respect follows:

"The application as originally filed on November 14, 1950 recited adoption and use by Benjamin D. Smith doing business under the name of Smith Manufacturing Company and also under the name of General Insecticide Company, Inc. On August 7, 1952 a substitute declaration was filed in which it was recited that Benjamin D. Smith believed himself to be the owner of the mark and that no other person except General Insecticide Company, Inc., a corporation of which he was president, had the right to use the trademark. Simultaneously, the application was amended to recite use by a related company, General Insecticide Company, Inc., stating that the corporation was controlled by applicant, Benjamin D. Smith in respect of the nature and quality of the goods on which the mark is used.

"The testimony of Benjamin D. Smith and Benjamin D. Smith, Jr., was taken on June 24, 1953. Their testimony shows that in 1948 the son started a business under the name of General Insecticide Company which operated as a branch of his father's business, and in 1950 he reincorporated under the same name. Since then his company has manufactured and sold "Green Leaf" plant dust; the products sold by his company are similar to those sold by his father's company, except that the formula has been improved; the manufacture and sale of "Green Leaf" products by his company are with full knowledge and approval of his father. The father testified that the right to use "Green Leaf" had been assigned over to the son, the formal assignment "being processed" at the time testimony was taken. The records of the Patent Office show that an assignment of the mark and this application to the son as an individual was acknowledged on June 26, 1953.

"It seems clear from the record that Benjamin D. Smith is not entitled to registration because he has assigned whatever rights he had to his son. It also seems clear that the son is not entitled to registration because he is not, as an individual, manufacturing or selling the product under the mark—the corporation is. In the absence of evidence showing retention of rights in the individual, it must be held that such use as has been made by the corporation inures to its benefit and not to the benefit of any individual. See: Society Brand Clothes, Inc. v. Kirsch, 102 U.S.P.Q. 260 (Com'r., 1954). Registration is denied on the present application without regard to the opposition."

In appellant's notice of appeal, the only errors assigned with respect to the *ex parte* refusal of registration are:

"8. The Assistant Commissioner erred in the holding 'Registration is denied on the present application without regard to the opposition.'

"9. The Assistant Commissioner erred in failing to grant leave to applicant to submit '* * * evidence showing retention of rights in the individual.' "

Those assignments do not expressly challenge the accuracy of the holdings, which we think were proper, made in the quoted portion of the commissioner's decision. The assignment to Black Panther Co., Inc., does not cure the defect since the assignee could acquire no greater right than the assignor had.

As the record now stands, the ex parte denial of the applicant's right to registration was proper. Appellant urges that the applicant should have been granted leave to submit evidence showing "retention of rights in the individual." The record does not show, however, that such leave was requested

or that it was refused by the Patent Office. Under such circumstances it would not be proper for this court to rule on the matter. Our decision here is without prejudice to any right which appellant may have to present additional evidence after this appeal is returned to the Patent Office.

Pursuant to a stipulation of the parties suggesting a diminution of the record, certain portions of the testimony of opposer's witness George F. Leonard were added to the record, with costs to be taxed when this court rendered its decision. We find the additions are relevant to the issues, and the cost is accordingly taxed against appellant.

The decision is reversed so far as it sustains the opposition, and affirmed so far as it denies registration on the *ex parte* ground above discussed.

Modified.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.