**HAROLD F. RITCHIE, INC., Plaintiff,**

v.

**CHESEBROUGH–POND'S, INC., Defendant.**

United States District Court
S. D. New York.
Sept. 14, 1959.

Townley, Updike, Carter & Rodgers, New York City, for plaintiff (Stuart N. Updike and Walter E. Shuttleworth, New York City, of counsel).

White & Case, New York City, for defendant (Thomas Kiernan, Ernest A. Fintel and Wm. Wallace White & Scotti, Edmund D. Scotti, New York City, of counsel).

RYAN, Chief Judge.

Plaintiff, Harold F. Ritchie, Inc., a New Jersey corporation, has filed this suit against defendant Chesebrough-Pond's Inc., a New York corporation, al-

leging trademark infringement and unfair competition.

Jurisdiction is predicated on the Lanham Act (15 U.S.C.A. §§ 1114, 1121), with pendent jurisdiction of the claim of unfair competition (28 U.S.C.A. § 1338(b)).

Plaintiff seeks an injunction against continued use of the word "Valcream" to describe defendant's product and against the continued use of packages where the contents and labels are alleged to be misleadingly similar to plaintiff's. Plaintiff also seeks an accounting of profits, treble damages and costs under 15 U.S.C.A. § 1117.

Plaintiff is the owner of the trademark "Brylcreem" under U. S. Patent Office Registration No. 398,474. Plaintiff is also the owner of a New York State Registration of the trademark "Brylcreem". The trademark is employed to designate a cream-style hair dressing for men.

Plaintiff's product is packaged in tubes contained in paperboard cartons conspicuously marked with the word "Brylcreem" and with plaintiff's name and address. It has been sold in intrastate and interstate commerce for many years. Plaintiff's sales have increased from $854,000 in 1953 to over $6,000,000 in 1959. "Brylcreem" has been the largest selling men's hair preparation in Canada for many years.

Defendant has long produced and sold in interstate commerce its "Vaseline Hair Tonic", a clear liquid, and since 1947 it has marketed its "Vaseline Cream Hair Tonic", a milky white liquid. In the year 1955, defendant decided to extend its operations to include a cream style hair dressing in tubes. This decision was reached after a study of the growth of this market, and particularly of "Brylcreem", the acknowledged leader in Canada and the United States since 1953.

Defendant decided not to use the mark "Vaseline" for this new product, because of the obvious possibility of confusion with its cream hair tonic in bottles. Prior to defendant's decision to manufacture and place on the market a competitive men's cream style hair tonic in tubes, a survey and examination was undertaken by it of all phases of the "Brylcreem" product and promotion. So-called Blind Tests were made, comparing "Brylcreem" with defendant's tube product. These tests also included other of defendant's products versus "Brylcreem", and in at least one case "Wildroot", a competitive product of a third manufacturer, was also tested in comparison.

Defendant notified its advertising agency of its plans for the new product and requested the agency to submit a list of possible names. The list submitted contained about 250 names; including one subheading of approximately 20 names titled "the" Brylcreem type. Early in 1956, defendant selected from this list the name "Valcream" (it had appeared as "Valcreem" on the list) as the name under which to market the new product.

After an independent trademark search and an interstate sale of "Valcream", defendant applied to the U. S. Patent Office for registration of its trademark. Thereafter, the patent office approved and published defendant's trademark for opposition. Plaintiff opposed the registration and after correspondence between the parties, this suit was filed.

At trial it was shown that in August 1956 and thereafter, defendant offered "Valcream" for sale in test markets in eight cities in the United States. At the time of the offering, defendant's product appeared in a red, white, black and gold carton and red, white and black tube. By April of 1957, when "Valcream" was offered nationally, the tube had changed to include gold and to conform to the carton. This color scheme of the tube had been planned earlier but the manufacturer of the tubes had had trouble duplicating the gold of the carton. The tube had a red "fez" cap and the orifice was a size 20. The product was sold in a 1¾ oz. size at $.39 and a 4 oz. size at $.59. The tube also had printed on it a slogan and directions for use and contained a citrus type perfume.

"Brylcreem" appeared in a red and white carton and red, white and black tube. The tube had a flat red cap which was replaced by a "fez" cap at a much later date. The "Brylcreem" orifice was a size 20 and it was conceded that "Brylcreem" was the only tube type product in this field with a size 20 orifice before defendant's product appeared. "Brylcreem" sold in 4 oz. size at $.59, as did other competitors and in 1¾ oz. size at $.39. No other competitor had had a 1¾ oz. size and none had had a $.39 selling price. "Brylcreem" had a slogan printed on its tube and directions printed on the carton and also contained a citrus type perfume.

Both plaintiff's and defendant's products and other similar products packaged in tubes are inserted in cartons and generally displayed for sale in their individual cartons, which cartons are observed by purchasers in drug stores, supermarkets, and other retail outlets.

Commencing in April 1958, defendant conducted an advertising campaign on the Pacific coast. Gil Hodges, a prominent baseball player, offered by television broadcast to purchasers of $.59 tubes of "Valcream" a personally signed refund check if they mailed the purchased carton to a Post Office Box in New York. The response of the public to this "Valcream" offer included 13 letters received by plaintiff "Brylcreem" with "Brylcreem" cartons enclosed. Defendant received at least 10, and probably more, "Brylcreem" cartons in response to its offer. This evidence, plus depositions taken from 13 of the senders, was introduced to show actual confusion on the part of the general public.

Other alleged evidence of confusion included isolated incidents in retail stores, an article in a trade paper, incidents concerning advertising and a request, received by plaintiff, about a price reduction offer of defendant. In addition to the above, plaintiff introduced numerous exhibits purporting to show conscious imitation on defendant's part.

The evidence, for the most part, does not support the allegations. The alleged evidence on conscious imitation is nothing more than advertising jargon and the use of practices which are common, in the business world in general, and in this highly competitive field in particular. The allegations concerning the similarity of packaging are without merit or substance. Defendant's use of its old and new "Valcream" tubes and its "Valcream" cartons has not produced and is not likely to produce any confusion as between them and plaintiff's "Brylcreem" cartons and tubes.

The greater proportion of the evidence concerning alleged actual confusion does not show confusion at all, but the usual carelessness and inattention of the purchasing public. Any confusion which may have arisen was not attributable to any action of the defendant but rather to the lack of reasonable concentration on the part of the potential consumers. This is not true of all the deposition evidence on this point however. Some few of these witnesses testified that they were actually confused.

In the final analysis, the only issue of this suit is one of trademark infringement. The test in this area is a statutory one provided for in 15 U.S.C.A. § 1114(1).

"Any * * * use [of the alleged infringing mark] * * * which * * * is likely to cause confusion or mistake or to deceive purchasers * * *." [is actionable].

It is settled that a name merely descriptive of an article of trade or of its qualities, composition, ingredients or characteristics cannot be appropriated as a trademark. 15 U.S.C.A. § 1052(e); Brown Chemical Co. v. Meyer, 1891, 139 U.S. 540, 542, 11 S.Ct. 625, 35 L.Ed. 247; Standard Paint Co. v. Trinidad Asphalt Co., 1911, 220 U.S. 446, 453, 31 S.Ct. 456, 55 L.Ed. 536; Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 116, 59 S.Ct. 109, 83 L.Ed. 73, rehearing denied 1938, 305 U.S. 674, 59 S.Ct. 246, 83 L.Ed. 437; Du Pont Cellophane Co. v. Waxed Products Co., 2 Cir., 1936, 85 F.2d 75, certiorari denied, 1936, E. I. Du Pont

De Nemours & Co. v. Waxed Products Co., 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443, 1938, 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed. 1539; Gold Dust Corporation v. Hoffenberg, 2 Cir., 1937, 87 F.2d 451, 452.

"Cream", when applied to the products involved here, cream style hair preparations, is clearly such a descriptive word. However here "Cream" and its derivative "Creem" are used as the second portion of the two-syllable words. The first syllables "Val" and "Bryl" are "fanciful or arbitrary elements sufficient to give * * * enough individuality so that viewed as an entirety [they] can perform [their] function of pointing distinctively to the origin of the goods to which [they] are applied."

Judson Dunaway Corp. v. Hygienic Products Co., 1 Cir., 1949, 178 F.2d 461, 465, certiorari denied 1950, 339 U.S. 948, 70 S.Ct. 802, 94 L.Ed. 1362. Therefore, the mark of the defendant is clearly entitled to registration.

The first step to be taken in ascertaining whether the mark "Valcream" is an infringing mark under the test is to consider the similarity, sound and meaning of the alleged conflicting marks themselves.

The decisions on multi-syllable trademarks containing a descriptive word, have established a well settled formula for looking at the alleged infringing trademarks.

"It is well settled that, while the question of confusing similarity of marks is to be determined from the marks as a whole, it is also proper to note that if a part of the mark is descriptive in nature, and has little or no trade-mark significance, it cannot be regarded as dominant and will generally be given less weight than more arbitrary portions of the marks." Magnaflux Corp. v. Sonoflux Corp., 1956, 231 F.2d 669, 670, 44 CCPA 868.

See also Smith v. Tobacco By-Products & Chemical Corp., 1957, 243 F.2d 188, 44 CCPA 880 and cases cited therein.

These decisions are not cited as controlling precedent, since in this area of trademark law each case must be considered separately and precedents are not all conclusive, but they do afford some standard of similarity and do show how various marks have been examined. La-Touraine Coffee Co. Inc. v. Lorraine Coffee Co., Inc., 2 Cir., 1946, 157 F.2d 115, 117, certiorari denied, 1946, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663; Eureka Williams Corp. v. Kres-Kno Oil Burner Mfg. Co., 1953, 202 F.2d 763, 766, 40 CCPA 851.

When we examine both marks, with emphasis on the arbitrary portions "Bryl" and "Val", we find that standing alone there is little similarity and small chance of confusion. But this is not enough, for the marks are to be taken as entireties. "Valcream" and "Brylcreem", when examined in this light and particularly in the light of the facts presented, are found to be not likely to cause confusion.

Plaintiff, as we understand its position, does not dispute this test we have applied but urges that all this is not in point since, here, there is no conjecture as to likelihood of confusion. In this suit, plaintiff argues, it has presented evidence of actual confusion and once actual confusion has been shown, all of the decisions dealing with the question of whether two substantially similar names are likely to result in confusion are not in point.

We have applied prior decisions in this field only to set a standard of similarity and to outline a method of examination of the trademarks in suit. We have concluded that the marks themselves, under the scrutiny of the test set forth, are not likely to cause confusion as a matter of law. We do not accept as law the doctrine that a showing of actual confusion by plaintiff, no matter how minimal, dictates a holding that defendant's "use * * * [is] likely to cause confusion."

The evidence of actual confusion introduced at the trial was hardly overwhelming. Most of the deposition and oral testimony, as we have observed, showed not

confusion but carelessness and inattention on the part of the purchaser. Other plausible explanations were raised by the defendant for the cartons of "Brylcreem" received in the Gil Hodges offer, but rather than attempt to negate all evidence of confusion, we accept as fact, and hold, that some instances of actual confusion were proved.

But the standard to be applied is whether an "appreciable number of ordinarily prudent purchasers will be confused." G. B. Kent & Sons, Limited v. P. Lorillard Co., D.C.1953, 114 F.Supp. 621, 626, 2 Cir., 1954, 210 F.2d 953 (affirmed on opinion below). Judge Clark has phrased it in this manner: "the test is the *likelihood* of confusion, not the number of specific instances of customer mistakes which can be piled up." Hyde Park Clothes v. Hyde Park Fashions, 2 Cir., 1953, 204 F.2d 223, 229 (dissenting opinion) certiorari denied 1953, 346 U.S. 827, 74 S.Ct. 46, 98 L.Ed. 351. Also see Admiral Corp. v. Penco, Inc., 2 Cir., 1953, 203 F.2d 517.

Although evidence of actual confusion is to be considered, the test remains *likelihood* of confusion as determined by the Court and the establishing of isolated cases of actual confusion does not change the test nor alter the role of the Court.

Following the test of our colleague, Judge Weinfeld, in G. B. Kent & Sons v. P. Lorillard Co., supra, we find that an appreciable number of reasonably prudent persons have not in fact been confused and there is not the requisite likelihood of confusion to sustain plaintiff's position.

Plaintiff has urged that the law expounded in G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 1959, 265 F.2d 385, is controlling. In that suit, plaintiff, the owner of the trademark "Dramamine" sued to enjoin the use of the mark "Bonamine". Both marks were applied to medicinal remedies for motion sickness.

The Court (C.A.7), in reversing the judgment of the district court rendered for the defendant, concluded that the marks "Dramamine" and "Bonamine" were clearly alike. This similarity led the Court to hold, as a matter of law, that "Bonamine" was likely to cause confusion.

We have found no such similarity between "Valcream" and "Brylcreem". We have also concluded that there was no likelihood of confusion as a matter of law.

Plaintiff also alleges unfair competition. It is enough for our purposes to conclude that plaintiff has not sustained the burden of proving any of its allegations and therefore the action for unfair competition as well as the action for trademark infringement are dismissed.