25 C.C.P.A. (Patents)

**WHITMAN PUB. CO. v. McLOUGHLIN BROS., Inc.**

**Patent Appeal No. 3982.**

Court of Customs and Patent Appeals.

June 27, 1938.

A. Yates Dowell, of Washington, D. C., and Edward S. Rogers, of Chicago, Ill., for appellant.

Edmund H. Parry, Jr., of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an interference proceeding involving applications for the registration of a trade-mark in the United States Patent Office. It comes to us by appeal from a decision of the Commissioner of Patents, speaking through the Assistant Commissioner, awarding priority to appellee. The commissioner's decision reversed that of the Examiner of Interferences who dissolved the interference without ruling upon the question of priority.

The mark which appellant seeks to register is The Big Little Book for use on "a series of Books published from time to time." Its application was filed October 19, 1934, and alleged continuous use "since about December 12, 1932."

It is stated in the briefs for both parties that following the official publication of the mark of appellant an opposition was filed by appellee on the same date, March 29, 1935, that it filed its application for registration, and that opposition proceedings were suspended pending the determination of the interference which was formally declared July 3, 1935.

The mark for which appellee makes application is The Little Big Books, printed in somewhat fanciful type. It is used on the same kind of articles as those upon which the mark of appellant is used, and the application alleges continuous use "since December 26, 1928."

In both applications there are disclaimers as to the word "Books" apart from the mark shown, and both state, in substance, that no claim is made to the words "Little" and "Big" except in combination with each other. The record discloses that use of the marks by both parties so far has been

on books for children and that the marks are affixed in addition to the individual titles of such books, being applied to the individual book and, in the case of appellee, to "sets" of such books put up in package form.

Concededly, the marks are confusingly similar and are applied to articles of the same descriptive properties; also, as we understand it, appellee is conceded to have been the first user, but its ownership of the mark is challenged for reasons hereinafter stated.

Taking up first the activities of appellee, it appears from the record that in 1928 it issued a set of twelve books, each book having an individual title, such, respectively, as "Little Stories for Little People"; "Little Rhymes for Little People"; "The House that Danny Built," etc. In addition to the individual title, each book bore on its front cover the imprint The Little Big Books. An exhibit consisting of a set of twelve books, introduced in evidence, shows them contained in a cardboard box with hinged covers, upon which covers the quoted imprint also appears. The books, printed in 1928, began to go on the market in 1929 and it appears that there were reprints in 1929, 1930, and 1931; 120,000 being issued in each of those years.

In 1932 no edition was issued. In 1933 an edition was issued in which a different type of paper was used. In 1934 and 1935, as we understand the testimony, there were editions in which as many as four of the volumes theretofore bound separately were consolidated in a single volume, and there is a claim that certain textual changes were made, and certain stories added.

The brief for appellant summarizes its activities as follows:

"In December, 1932, Whitman prepared a series of books for children which were unique in subject matter, style and format. These books were short and thick, with small fat pages and were designed to fit the hand of a child. The subject matter was patterned after the familiar newspaper comic strips with an illustration opposite each printed page, and like the comic strips, there is a change in each issue * * *. This creation was unique and the books immediately obtained a large sale. They were designated 'The Big Little Books' * * *. The extent of the business in them is indicated by the fact that there has been a total of 26,861,533 copies sold. The average per year has been 8,-750,000 copies, * * *. The subject matter of the books is constantly changing, about three titles a month being put out * * *. All, however, are designated 'Big Little Books' which is the trade-mark for the Whitman books as distinguished from the title of the particular volume. The Whitman books are sold generally throughout the country and are always designated as the 'Big Little Books.' This is the mark Whitman seeks to register. It is a mark which in fact distinguishes Whitman's goods."

It may be added that several of the books issued by appellant were filed as exhibits. Each of these bears an individual title. Some of the respective titles are "Dick Tracy," "Skippy," "Little Orphan Annie," "Moon Mullins." Each volume has on its outside cover the imprint The Big Little Book. It is shown by another exhibit that more than 100 different books had been issued by appellant up to the time of the taking of its testimony. Whether ever sold in sets packed in the manner in which appellee sometimes packed its books, with the mark affixed to its package, does not appear, nor is this deemed material.

One phase of the case which was not referred to in either of the decisions of the tribunals of the Patent Office (it evidently not being thought necessary by them to consider it under their respective theories as to the law applicable to the controversy) is the subject of a very earnest contention made before us by appellant, and it appears proper for us to consider it.

Briefly stated, it appears that the subject matter of the set of books printed by appellee in 1928, and reprinted in subsequent years as above described, originated in England; that it was the work of English writers, and that it was printed in England by the Oxford University Press. It further appears that the titles of the individual books so issued in England were the same as the titles given them in the print and reprints by appellee in the United States, and, upon the whole (although the evidence is not conclusive upon this point), we think it fairly may be assumed that the individual volumes and the sets issued in England also bore the imprint The Little Big Books, applied to them by appellee in its print and reprints in the United States.

There is no evidence that any of the books so printed in England were ever imported into the United States and here

sold or offered for sale, nor is there any evidence that the English authors or English publisher ever sought or procured a United States copyright on them. Indeed, there is no evidence that they were ever copyrighted in England. When appellee issued them it did copyright them in the United States. At least, the volumes filed as exhibits bear a copyright imprint. Based upon these facts, appellant, as its primary contention before us, alleges that appellee is met at the threshold by an "insuperable obstacle * * * which effectively prevents any decision" in its favor. Appellant's brief says:

"* * * Both the name, which McLoughlin is seeking to register, and the books to which the name has been applied were appropriated by McLoughlin without authority from a set of books written by Mr. and Mrs. L'Estrang and published by the Oxford University Press. The pirated books were copyrighted by McLoughlin upon an application falsely asserting its employee Miller to be the author. This is unclean hands as a matter of law and prevents any decision in McLoughlin's favor. We shall therefore discuss in this brief two questions: (1) McLoughlin's standing to be heard and (2) the fact that McLoughlin's alleged trade mark is not applied to a series of books published periodically as the application asserts but is the title of a complete work not added to from time to time and hence is not registrable under the trade mark act.

"It is Whitman's contention that McLoughlin is not in court with clean hands and also that if Whitman were not in the case at all, McLoughlin still would not be entitled to a registration because, without reference to its inequitable conduct which prevents any consideration of whatever rights it might otherwise have, it cannot qualify under the statute and has no trade mark to register."

■ The issue of "unclean hands" so raised, we think, may be disposed of without lengthy discussion by us. It is not seen how the matter of appellee's title to the copyright can be determined in this proceeding, nor is it seen how this matter can affect appellee's right to register a trademark. The Patent Office has no jurisdiction over copyright matters, nor has this court. It must be borne in mind that no English concern is here complaining with respect to appellee's activities either at the time it first began to print the books bearing the mark, or at any subsequent time. It is true that appellant introduced testimony to the effect that it acquired "The American rights" of the Oxford University Press, but that was at a period subsequent to the institution of the interference and long after appellee's activities began. It is really difficult to say just what "American rights," in any way involved here, appellant obtained. It is clear that Oxford University Press never had any United States copyright, nor any United States trade-mark to convey, and the right of registration of the latter is all that is here involved.

■ It is suggested by appellant that appellee's conduct in reprinting the English books and copyrighting them was unethical. This requires no expression of opinion by us. The acts were not legally improper, so far as anything in the record discloses, and the activities of appellee in this regard are not in themselves deemed to be of a character which should deprive it of the right to claim ownership of the mark.

The gist of the holding by the Examiner of Interferences, embraced in two decisions (the last decision being upon an application for rehearing), was that, in the case of appellee, the series of books issued by it was complete at the time of the print in 1928, and that the phrase "The Little Big Books" had become a mere title to the subject matter. In his second decision, the Examiner of Interferences said:

"* * * The examiner's [original] decision was based primarily upon the subject matter contained in the junior party's [appellee's] Exhibit No. 1, which the record clearly shows was sold by the latter continuously beginning in 1928 and continuing to 1934, a period of six years. During all of this time the subject matter was not varied in any way and it is believed was clearly in the public domain except in so far as the junior party may have obtained a valid copyright of this subject matter. During all this period of time, to wit: from 1928 to 1934, there was nothing either in this subject matter itself or in any acts of the junior party to apprise the public that this subject matter was not complete. As to this subject matter, the title 'The Little Big Books' was, for reasons fully stated in the decision dated May 25, 1936, clearly and directly descriptive thereof."

On the other hand, the Examiner of Interferences held that the subject matter of appellant's publication was not complete prior to 1934 "but was distinctly a serial publication of which the public was amply apprised upon the face thereof, in much the same way as is a comic supplement in a newspaper * * *."

It was found by the Examiner of Interferences that in editions issued by appellee in 1934 certain stories were added to those included in its editions of prior years, but this was held to be immaterial inasmuch as appellant had entered the field in 1932, after appellee's print had become "complete."

The Examiner of Interferences further declared:

"In this Office the titles to printed publications are registered if, as, and when it appears that the subject matter is not complete. Since it appears herein from the testimony that the subject matter of the printed publication constituting the merchandise of the application of McLoughlin Bros., Inc., was complete long prior to the date of filing thereof, it follows that this application was and is not prima facie allowable. More specifically, the title to the printed publication is incapable of exclusive use as a trade-mark by this applicant."

The commissioner, after first holding it to be immaterial, in his opinion, whether appellee made the additions to the text of the editions issued by appellee in 1934, said:

"I can perceive no reason why a trade-mark may not properly be applied to a book, or to a complete collection of books, just as it may be applied to a serial publication, or to any other article of merchandise. It is true, of course, as was held in the case of In re Page Co., 47 App.D.C. 195, that the title of a particular book may not also function as a trade-mark for that book, or for a set or series in which it is included; but that situation is not presented here. As already noted, each of appellant's books bears its individual title, and it is not suggested that any of these titles is even remotely simulated by the trade-mark.

"Nor am I able to agree with the examiner of interferences that the mark has become 'the title to the printed publication' simply because the series of books may be considered complete. From that holding it would necessarily follow that upon the completion of any such series, or upon the suspension of its publication, a registered trade-mark under which the books of the series had been sold would become invalid, and its registration would be subject to cancellation. In fact that would be the status of appellee's mark, which the decision states is registerable, in the event appellee should decide to add no more books to those already published. To my mind such doctrine is clearly unsound. I think that trade-mark ownership in a mark applied to books depends upon exactly the same considerations as those by which the question of ownership is determined with respect to marks applied to any other merchandise. I can find no justification, either in law or in reason, for applying a different rule.

"Appellant has been using its mark, on the goods specified in its application, continuously since 1928. The date of first use claimed by appellee is December, 1932. In the view I take of the case appellant is therefore entitled to an award of priority."

In the case of In re Page Company, 47 App.D.C. 195, the court held that a trade-mark may be registered for a series of literary publications, but that such mark must be arbitrary, and not merely the name of any one or more of the series, the reasoning being that the name or title is clearly descriptive, the public having "no way of describing the book but by the use of the name." Also, it was there held that "The trademark law is not intended to conflict with or extend the operation of the copyright law."

We find ourselves in agreement with the reasoning of the Commissioner of Patents in this case. It seems to us clear that appellee's use of the mark in 1928 and in the subsequent years was a trade-mark use indicating origin; not a title use, and, although it did not issue an edition in 1932, the year appellant began use of its mark, we do not think appellee should be held to have then abandoned it. Its subsequent use of it in the years 1933, 1934, and 1935 negatives such an assumption. We are of the opinion that so long as appellee continued to reprint and issue the books originally printed, bearing the imprint of the mark, even had no change in text been made, it had the right to claim ownership of the mark so far as anything in this record shows.

The decision of the Commissioner of Patents is, accordingly, affirmed.

Affirmed.