45 C.C.P.A.(Patents)

**Application of Raymond K. COOPER.**

**Patent Appeal No. 6329.**

United States Court of Customs
and Patent Appeals.

April 14, 1958.

Rehearing Denied May 23, 1958.

**612**

Marzall, Johnston, Cook & Root and John A. Marzall, Chicago, Ill., for appellant.

Clarence W. Moore, Washington, D. C., for Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY and RICH, Judges.

RICH, Judge.

The sole question raised by this appeal is whether an arbitrary, that is to say coined, term which is the title of a book, and the only designation the book has, is registrable as a trademark for books under the Trade-Mark Act of 1946, also known as the Lanham Act, 15 U.S.C.A. § 1051 et seq.

### Facts.

September 28, 1953, appellant applied for the registration of Teeny-Big as a trademark for books, in Class 38, on the Principal Register under the Act of July 5, 1946, alleging first use and use in "commerce" on July 1, 1953. The specimen filed with the application appears to be the jacket of a book, the front cover portion bearing at the top the words Teeny-Big, underneath which is a picture and under the picture the statement "By R. K. Cooper with Illustrations by Dorothy Ashbrook Hobson." On the portion which would wrap around the back of the book are printed the title and author's name. On the back portion is the usual blurb from which one may gather that the work is a juvenile, that is to say a book for children, the principal character in which is a little elf with magic powers of self-expansion named Teeny-Big. It also appears that Raymond K. Cooper, the author and appellant here, Yale '22, is president of four large building and supply houses, grandfather of five and took "time out of his busy routine to capture within the covers of his new book the elusive spirit of childhood." In sum, the book contains a single story, the name of the story is Teeny-Big, the title of the book is Teeny-Big and the book has no other name, title, subtitle or any other designation except its generic name "book."

### Decisions Below.

The Examiner of Trademarks refused registration "on the ground that the mark presented herein is merely the title of a

book" and because "the author or proprietor of a literary work has no property in its name, which is merely a term of description which must be used in calling for the goods." Five decided cases and a text were cited as authorities.

Assistant Commissioner Leeds affirmed the decision of the examiner in an opinion published at 110 USPQ 323. Her reasons for refusing registration were essentially the same as those of the examiner but she made this concise statement as to her principal reason:

"*The* name which is *the only name* by which an article of merchandise may be identified—whether a book or any other—is not a trademark and is therefore not registrable. Since the subject matter of this application is the name and the only name by which the copies of applicant's book can be identified, it is not a trademark and is not registrable."

### Appellant's Points.

It has so long been settled that the title of a book cannot be registered as a trademark, because it is not a trademark, that there has been some question in our minds as to whether the concurring decisions below should not be summarily affirmed with mere citation of some of the principal authorities. In re Page Company, 47 App.D.C. 195, alone would suffice. However, the apparent sincerity of appellant's arguments persuades us to a presentation of our views on the principal contentions which have been made and an explanation of the reasons why we believe the appellant's arguments to be unsound.

### Wrong Question Asked.

At the outset, appellant misstates the question before us, asserting that it is "whether an *arbitrary* word may be used as a trademark for books in the same manner in which the same trademark could be used for ordinary commodities such as fruits, canned goods, shoe laces, locomotives, etc." This is *not* the issue, which is as we have stated it

at the beginning of this opinion. No one has asserted that a word may not be *used* as a trademark for books or that there cannot *be* trademarks for books, in the form of a word or otherwise, or that trademarks for books cannot be registered under the Lanham Act. Appellant appears to assume that Teeny-Big has been used *as a trademark* for books in asking that it be registered, but that is what we have to decide. Nothing we say should be taken as implying that no trademark for books can be registered; but before there can be registration there must be a trademark and a trademark exists only where there has been trademark use.

### Statutory Provisions.

Appellant's first point, as briefed, is that the 1946 Act *entitles* him to registration. It is urged that Teeny-Big is registrable by the express provision of Sec. 2 unless it falls within one of the prohibitions of that section and appellant contends that it does not.

Section 2, relied on by appellant, insofar as here pertinent provides:

"*Sec. 2. Trade-marks registrable on the principal register*

"No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \* \*

"(e) consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them, \* \* \* ;" 15 U.S.C.A. § 1052.

The introductory clause and the quoted portion of subsection (e) are complementary and opposite sides of the same coin to the extent that a mark which is "merely descriptive" of the goods to which the applicant has applied it is not being used by him *as a trademark* for those goods and hence, in that use, *is not a trademark*. The decisions below are obviously predicated on Section 2 in hold-

ing Teeny-Big unregistrable on the grounds (a) that it is not a trademark and (b) that it is the name of applicant's book.

■ To eliminate any possible doubt on the matter, we proceed on the understanding that the name of a thing is descriptive of it, for the sense in which the trademark law uses the term "descriptive" includes the names of things as well as qualifying expressions. In lay language the name of a thing might be referred to as designative, as in the expression "red rose" the name "rose" is designative and the adjective "red" is descriptive, but trademark law lumps the names and the qualifying expressions in the descriptive category. Thus the names "orange," "bean" and "book" are clearly "descriptive" of oranges, beans and books respectively. Furthermore, such names are incapable of functioning as trademarks because they cannot distinguish the goods of one person from the goods of another.

Appellant asserts that his mark does not fall within any of the prohibitions of the Trade-Mark Act, that he has complied with all of its provisions and apparently *assumes* that Teeny-Big has been used by him as a trademark. We do not think this is an overstatement for at the beginning of the brief it is stated that "evidently the rejection of the application was based on the alleged premise that a valid trademark may not be had on the use of an arbitrary name *as a trademark* for books (not in series)" and the question is asked "what protection may he have when an arbitrary word or name is used *as a trademark* for his books?" (Emphasis ours.)

Appellant seems to be arguing that whenever an *arbitrary* term is applied to a commodity of commerce—which a book is, of course—it *ipso facto* becomes a trademark. For example, he says:

"The word 'Potatoes' may not be protected for potatoes, but 'Zippo' may be a valid trademark for potatoes or cigar lighters. 'Zippo', like 'Teeny-Big', being an *arbitrary* word

for the goods or commodity by which the public designates the product to indicate the origin."

To this is coupled an argument, the main theme of the brief, as plausible as it is fallacious, which will best be understood from the following selected passages, illustrative of many others:

"The Examiner holds that the applicant *may not* have protection on the name or mark of his book, because there is no other way in [sic] asking for the book. That same kind of reasoning would be true with respect to any other goods, or to commodities such as canned beans, oranges, or what not.

\* \* \* \* \* \*

"To say that there is no other way of asking for a book than by its title, does not appear to be sound and logical because the same is true of any goods or commodity. If a person should ask for a book—and there are millions of books—the next question would be, 'What book do you want?', and the answer would be, 'Teeny-Big'.

\* \* \* \* \* \*

"In the same vein, if somebody asked for an orange or a dozen of oranges, the grocer would say, 'What kind of oranges do you want?' and, if 'Sunkist' oranges were wanted they would reply, 'Sunkist' oranges.

"If a purchaser would say, 'I want some canned beans', he would be asked, 'What kind of canned beans do you want?' He would reply by saying, 'Libby's', 'Heinz', or whatever other make he wants.

\* \* \* \* \* \*

"It does not seem to make any difference whether the goods be books, games, golf clubs, riding saddles, oranges, candy, canned goods, or any other item."

But it does make a difference. The purchaser of a book is not asking for a "kind" or "make" of book. He is pointing out which one out of millions of distinct titles he wants, designating the

book by its name. It is just as though one walked into a grocery and said "I want some food" and in response to the question "What kind of food?" said, "A can of chicken noodle soup."

The fallacy in appellant's arguments resides in the comparison of the wrong terms. Teeny-Big must be compared to "oranges" and "canned beans" *on the facts of this case*, and not to "Sunkist," "Heinz," and "Libby's." Obviously, to support our statement of what terms must be compared, it behooves us to show that Teeny-Big is a descriptive name like "canned beans," rather than a trademark like "Sunkist" as assumed (but not proved) by appellant.

The key to this case is not the word "arbitrary," which appellant takes to be tantamount to a directive to register, but the true nature of the words Teeny-Big. Man is a creative animal. By the labor of his hands he creates things and by the labor of his mind he creates thoughts which are woven together into the form of essays, reports, speeches, court opinions, stories and the like. Man is a verbal animal and each new thing brings into being before long a new name —hammer, wheel, wagon, automobile, airplane. Things found in nature are also named—oranges, beans. Language evolves adjectives like teeny and big and baked and some new things can be named without coining new words, for example tank truck.

Books, as articles of merchandise, have entered the market place in great quantities. As appellant says, there are millions of them. They proliferate in two ways. New copies of old books are constantly manufactured—"Hamlet," the "Holy Bible," "Webster's Dictionary" and J. K. Lasser's "Your Income Tax." But, as in the case we are dealing with, authors and their publishers are constantly producing *new* books, the contents of which are new ideas in different forms—new plays, new yarns, new attempts to recapture the elusive spirit of childhood. Each is a new thing, unique, which has to have a name and, speaking generally, its name will fall

into one of two categories. In the first category is a name like "tank truck" suggested above, composed of existing descriptive words or names, or other purely descriptive phrases such as "Furniture Repair and Refinishing" and "The Life of Abraham Lincoln." The second category contains the *new names* for new books, the ones appellant calls "arbitrary"—"Candide," "Leviathan," "Huckleberry Finn," "Arrowsmith," "Moby Dick," "Pride and Prejudice," to pick a few at random, names which give, prior to reading it, no indication of what is in the book. Of course there are· also the intermediate names ranging through all shades of descriptiveness of the book's contents. But however arbitrary, novel or nondescriptive *of contents* the name of a book—its title—may be, it nevertheless *describes* the book. Appellant has nowhere attempted to answer the question, How else would you describe it— what else would you call it? If the name or title of a book were not available as a description of it, an effort to denote the book would sound like the playing of the game "Twenty Questions."

Appellant appears to argue that there is an inconsistency in registering as a trademark the name for a series of books and in not registering the title of a single book. We see no inconsistency. The name for a series, at least while it is still being published, has a trademark function in indicating that each book of the series comes from the same source as the others. The name of the series is not descriptive of any one book and each book has its individual name or title. A series name is comparable to the title of a periodical publication such as a magazine or newspaper. While it may be indicative, either specifically or by association in the public mind, of the general nature of the contents of the publication, it is not the name or title of anything contained in it. A book title, on the other hand, especially one which is coined or arbitrary, identifies a specific literary work, of whatever kind it may be, and is not associated in the public mind with the publisher, printer or book-

seller—the "manufacturer or merchant" referred to in the Trade-Mark Act (Sec. 45, definition of trademark). If a title is associated with anything, it is with the author for it is he who has produced the literary work which is the real subject of purchase.

As Teeny-Big is no more than the name of a book, its only name, it is not a trademark under the statute, Section 2. Hence, Teeny-Big was properly refused registration. It is of no avail to point out that it was "arbitrary" because every newly coined name has that characteristic, for example "radio," "woofer," "tweeter" and "smog," a fact that tends to be forgotten as new nomenclature becomes a part of the language and new titles are added to the publishers' catalogs.

In saying that Teeny-Big is the name of a book, we note that in this context the term "book" has a dual aspect. First, it is an article of manufacture which can be sold in the market place. As such it is not unlike blankbooks or pads of paper. Secondly, it contains, by virtue of the printing on the paper, an intellectual content which is incorporeal—the story. The title of the "book" does not really pertain to the first aspect at all but identifies, names or describes the incorporeal literary content, which is subject to the laws pertaining to literary property. Publishers, in short, are not in the blankbook business.

There is a compelling reason why the name or title of a book of the literary sort cannot be a trademark. The protection accorded the property right in a trademark is not limited in time and endures for as long as the trademark is used. A book, once published, is protected against copying only if it is the subject of a valid copyright registration and then only until the registration expires, so eventually all books fall into the public domain. The right to copy which the law contemplates includes the right to call the copy by the only name it has and the title cannot be withheld on any theory of trademark right therein.

As was aptly said in In re Page Company, 47 App.D.C. 195, when copyright in a protected work expires, "the use of the descriptive name becomes *publici juris*." The title there under consideration was "Pollyanna" which appears to be quite as "arbitrary" as Teeny-Big. Of course, it makes no difference whether the work whose name is sought to be registered is copyrighted. If it is not, the public may copy it at once and would be as clearly entitled to call it by its name. If there were two publishers of "Pollyanna," how could the title possibly indicate origin or distinguish the goods of one from the goods of the other?

We have reviewed the opinion of Judge Garrett in Whitman Publishing Company v. McLoughlin Bros., Inc., 97 F.2d 608, 25 C.C.P.A., Patents, 1298, so extensively quoted by appellant. We find it entirely consistent with what we have said in this opinion and with the result reached. Other cases which have held that the titles of books are mere names, and hence not trademarks, are Black v. Ehrich, C.C.1891, 44 F. 793; In re Page Company, supra; Ex parte Reinhold Publishing Corporation, 68 U.S.P.Q. 401 (Com'r 1946), and Ex parte Simmons-Boardman Publishing Corporation, 77 U.S.P.Q. 660 (Com'r. 1948).

### Other Arguments.

Appellant urges that since the copyright laws do not protect the titles of books, if the Patent Office will not grant any protection on the name or title "then the applicant is without recourse even under the Constitution of the United States, which provides that patentees and authors *shall* be entitled to *protection* on their respective works." Elsewhere it is alleged that this supposed failure of the law "appears to be a violation of" the Constitution.

Article I, Section 8, eighth clause, of the Constitution, to which we are referred, does no more than grant power to Congress to secure certain rights to authors and inventors insofar as it elects to do so. The cited clause grants no *rights* to authors and has noth-

ing to do with the registration of trademarks. It is well known that the rights in book titles are afforded appropriate protection under the law of unfair competition. See Nims, "Unfair Competition and Trade-Marks," 4th Ed., Chapt. XVIII, especially § 277; Shoemaker, "Trade-Marks," Sec. 112 at page 325.

▉ Appellant says, "The Patent Office does register trademarks for names or titles of *games,* which appears to be inconsistent with its holding that names or titles of books are not registrable." He then cites a number of examples together with the registration numbers and other data. We refrain from mentioning any of them so as not to reflect on the validity of registrations not before us, it being clear that we have not been supplied with sufficient information to enable us to say whether the words registered were legally entitled to be considered trademarks or were mere descriptive names which could not at the same time be trademarks. Having postulated this situation, however, appellant makes much of it in argument, one of his typical contentions being, "If games are registrable, and they are, books also should be registrable." Of course, neither games nor books are registrable but only trademarks.

▉ The short answer to the last mentioned contention is that the decision of this case in accordance with sound law is not governed by possibly erroneous past decisions by the Patent Office. Suffice it to say that the same principles of law apply to the registration of trademarks for all kinds of goods. If appellant were seeking to register Teeny-Big as a trademark for a game the name of which was Teeny-Big and it had no other possible descriptive name, our decision would be the same, and we trust it would have been the same in the Patent Office.

The decision of the Assistant Commissioner is *affirmed.*

Affirmed.

WORLEY, Judge (dissenting).

I appreciate the detailed discussion in the majority opinion, but am not completely satisfied as to the correctness of the result reached therein. True, there is precedent, particularly in the In re Page Company decision, supporting the conclusion that the instant mark is not registrable, but it is also true that this court itself has provided support for the opposite view. For example, in Whitman Publishing Company v. McLoughlin Bros., Inc., 97 F.2d 608, 611, 25 C.C.P.A., Patents 1298, this court quoted with approval the following language:

"*I can perceive no reason why a trade-mark may not properly be applied to a book,* or to a complete collection of books, just as it may be applied to a serial publication, or to any other article of merchandise. \* \* \*

"\* \* \* I think that trademark ownership in a mark applied to books depends upon exactly the same considerations as those by which the question of ownership is determined with respect to marks applied to any other merchandise. *I can find no justification, either in law or in reason, for applying a different rule.*" (Italics supplied.)

I readily concede the precise issue here was not present there, but the language is especially significant since it was approved after consideration of In re Page. That decision was handed down in 1917, long prior to enactment of the Lanham Act, by the Court of Appeals of the District of Columbia. I respect the views of that court as "Those of a co-ordinate appellate court having, perhaps, approximately the standing" of this court in patent and trademark matters, and as such "they are persuasive and entitled to deference, but are not authoritatively binding."[1] In my opinion, the Page case is irreconcilable with the quoted language of the Whitman decision. I prefer to follow the latter, not necessarily because it is one of our own de-

1. Watson v. Allen, 103 App.D.C. —, 254 F.2d 342.

cisions, but primarily because it is sound and consistent with the provisions of the Lanham Act.

I agree with the majority that "The sole question raised by this appeal is whether an arbitrary, that is to say coined, term which is the title of a book, and the only designation the book has, is registrable as a trademark for books under the Trade-Mark Act of 1946, also known as the Lanham Act."

The only provisions of that act germane to the instant issue are:

"Sec. 2. *Trade-marks registrable on the principal register*

"No trade-mark by which the goods of the applicant *may be distinguished* from the goods of others shall be refused registration on the principal register on account of its nature unless it—(Italics supplied.)

\* \* \* \* \* \*

"(e) Consists of a mark which, (1) when applied to the goods of the applicant is *merely descriptive* or deceptively misdescriptive of them, \* \* \*." 15 U.S.C.A. § 1052. (Italics supplied.)

It does not seem to me that a reasonable interpretation of the above language would prohibit registration of the instant mark. First, it is obvious, as the majority concedes, that the mark is an "arbitrary, that is to say coined, term \* \* \*." As such it would seem to fully satisfy the first requirement of the Act with respect to its capability of distinguishing appellant's goods from the goods of others. Second, how a mark can be considered "arbitrary" and at the same time "merely descriptive" is something I am unable to reconcile with the express provisions of subsection (e). While it is quite true that a trademark which was *originally arbitrary* may eventually *become descriptive*, that is not the case here.

Our late colleague, Judge Cole, once observed that "Trademarks exist in a practical world \* \* \*."[2] Broadly speak-

ing, I think that statement captures the spirit of the Congressional intent as reflected in the report of the Senate Committee on Patents (Senate Report No. 1333, May 14, 1946, U.S.Code Cong. Service 1946, p. 1274) which accompanied the Lanham Act:

"The purpose of this bill is to place all matters relating to trademarks in one statute and to *eliminate judicial obscurity, to simplify registration and to make it stronger and more liberal,* to *dispense with mere technical prohibitions and arbitrary provisions, to make procedure simple,* \* \* \*.

\* \* \* \* \*

"The purpose underlying any trade-mark statute is twofold. One is to protect the public so it may be confident that, *in purchasing a product bearing a particular trademark which it favorably knows, it will get the product which it asks for and wants to get.* \* \* \* (Italics supplied.)"

If the test employed in rejecting the instant mark is a proper and valid standard, then it should be consistently applied. That such does not appear to be the case is best illustrated by reference to but a few registered trademarks encountered daily, such as "Mercurochrome," "Coca-Cola" (also registered as "Coke"), "Mentholatum," "Pepto-Bismol," "Bufferin," "Anacin," "Absorbine, Jr.," and "7 Up." Suppose, for example, a buyer wants a bottle of "7 Up." How can he identify what he wants without calling for it by name—the only name it has and the only name he knows? What other name did it have at the time of registration? Would not the same also be true of a multitude of other popular marks? Then why should a different standard govern the instant mark? How can a purchaser identify "Teeny-Big" without asking for it by name—the only name it has and the only name he knows?

In addition to the above, counsel for appellant cites numerous names of games

2. Burton-Dixie Corp. v. Restonic Corp., 234 F.2d 668, 43 C.C.P.A., Patents, 950.

which have been registered, among which are "Parcheesi," "Bingo," "Indian Checkers," "Galloping Dominos," and "Monopoly." It seems appropriate to wonder by what test those marks were passed for registration, and to inquire how they, any more than "Teeny-Big," can be identified by any other name.

It does not seem consistent to grant trademark protection for the titles of periodicals, comic strips, and books in series yet deny protection to the arbitrary title of a single book. For example, "The Saturday Evening Post" is a registered trademark, although obviously it is the name and the only name by which that periodical can be identified. There, as here, trademark registration does not cover the *contents,* but merely the *title.* The contents of the Post, if copyrighted, would enter the public domain upon expiration of the copyright protection; however, the trademark under which the contents were published would not be available to the public, but would remain with the publisher. Would that not also be true here? In that connection, the following language in the majority opinion is interesting:

> "There is a compelling reason why the name or title of a book of the literary sort cannot be a trademark. The protection accorded the property right in a trademark is not limited in time and endures for as long as the trademark is used. A book, once published, is protected against copying only if it is the subject of a valid copyright registration and then only until the registration expires, so eventually all books fall into the public domain. The right to copy which the law contemplates includes the right to call the copy by the only name it has and the title cannot be withheld on any theory of trademark right therein."

I trust I do not do the majority an injustice in construing that language to indicate that they have been influenced, at least to some extent, as I think was also true in several of the cases cited below, by the provisions of the Copyright Act, 17 U.S.C.A. § 1 et seq. an act over which this court has no jurisdiction.

It seems there is an underlying fear on the part of the majority that registration of the instant mark would provide *permanent protection* of the contents of the book. However, I do not see that registration of the instant *title* would carry with it any greater degree of protection of the *contents* than is the case with respect to the title of a series of books or periodicals.

It is a matter of common knowledge that millions are spent in an effort to educate the public to ask for products *by a particular name.* I think Congress intended to encourage, not retard, those efforts when it enacted the Lanham Act. I not only fail to see that registration of the instant mark would result in any violence in the trademark world, but, on the contrary, feel that its registration would be clearly consistent with the provisions of that Act.